COLD METAL PROCESS CO. v. ALUMINUM CO. OF AMERICA.

Civil Action No. 23997.

District Court, N. D. Ohio, E. D.

Feb. 1, 1947.

C. B. Zewadski, of Detroit, Mich., Howard Burns, of Baker, Hostetler & Patterson, all of Cleveland, Ohio, and R. M. McConnell, of Knoxville, Tenn., for plaintiff.

W. D. Keith, of Cooper, Kerr & Dunham, all of New York City, Hyde, Meyer, Baldwin & Doran, of Cleveland, Ohio (John W. Meyer and Thomas J. Doran, both of Cleveland, Ohio, of counsel), and R. R. Kramer, of Knoxville, Tenn., for defendant.

WILKIN, District Judge.

The motion of the defendant filed December 10, 1946, is sustained. A reading of the deposition of Dr. Sachs does not reveal sufficient grounds for his refusal to testify. The witness must either show that the testimony sought is privileged or he must answer the questions.

The situation revealed by this motion does not come within the ruling in Hickman v. Taylor, 3 Cir., 153 F.2d 212, 223. While in that case the court indicates that the word "privileged" as used in the Rules (Federal Rules of Civil Procedure, rules 26, 33, 34, 28 U.S.C.A. following section 723c) extended the exemption to situations other than those covered by the rule of testimonial exclusion, it did not make clear what those "other situations" are. In that case the word "privilege" as used in the Rules was held to comprehend "memoranda of talks with witnesses, signed statements made by witnesses, the lawyer's recollection of talks with witnesses." It appears that in that case the interrogatory was seeking information and opinion obtained by or in the possession of the lawyer. In this case the questions are directed to a third party not a lawyer or a doctor or a priest, within the meaning of "privileged communications." Dr. Sachs is not a Doctor of Medicine, and the information which he has has not been shown to be a confidential communication to him from the client.

This court understands the purpose of the Rule as stated in the opinion in the Hickman case (2, 3) and (4, 5). Nothing appears in the record before the court to show that the examination of Dr. Sachs transcends the purpose of the rule, and it is to be noted that the opinion in the Hickman case, after quoting from the opinion of the District Court [4 F.R.D. 479], stated:

"Insofar as the remarks of the learned District Court apply to Rule 34, they went too far. Insofar as they apply to Rule 26 and Rule 33, they are approved." 153 F.2d 216.

The proceeding in the instant case is under Rule 26 and therefore the ruling of the District Court in the Hickman case would apply.

On Application to Compel Answers to Questions.

This case is here a second time on an application of the defendant for an order to compel the witness George Sachs to answer questions put to him in connection

with the taking of his deposition. The case is pending in the United States District Court, Northern Division of the Eastern District of Tennessee. In accordance with notice duly served, the defendant attempted to take the deposition of Sachs on November 8, 1946. On advice of counsel for plaintiff the witness refused to answer certain questions and this court was appealed to in accordance with the Rules of Civil Procedure for an order compelling the witness to answer. On the 1st day of February, 1947, this court ruled that the deposition did not reveal sufficient grounds for the witness's refusal and that therefore the motion would be sustained and the witness ordered to answer.

A second attempt was then made to take Sachs's deposition and after a few preliminary questions were answered, the witness again, on advice of counsel for plaintiff, refused to answer. Counsel for plaintiff then, over the objection of counsel for defendant, proceeded to ask the witness certain questions which, together with his answers, revealed that he had been employed by counsel for plaintiff to examine certain specimens.

Counsel and the witness then came again to this court. Counsel for defendant requested an order directing the witness to answer, or a citation for contempt, and counsel for plaintiff requested a ruling by the court that the witness, in view of the additional showing in the deposition as to his employment, was within the rule governing privileged communications and witnesses.

The witness is a metallurgist, a member of the faculty of Case Institute of Technology in Cleveland, and an expert in X-ray metallography. He was engaged by Mr. Webb of counsel for plaintiff to make certain tests and X-ray photographs of samples of metal sent to him by the plaintiff on order of Mr. Webb. Sachs was informed that Mr. Webb wished information in connection with his preparation of cases involving the patent claims of the plaintiff.

The case turns on an application of the principles announced in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 395. Counsel for plaintiff say in their reply brief:

"So that there may be no misunderstanding of our position, we state as we have stated before, that the information here sought does not come strictly within the attorney-client privilege, but does come strictly within the rule laid down by the Supreme Court in the Hickman case protecting the 'work product of the lawyer' from the preliminary investigations of opposing counsel as a matter of sound public policy."

Counsel for defendant also rely on the decision in the Hickman case and quote sentences and paragraphs of the opinion to support their contention that the information sought in this case does not come within the privilege. In the Hickman case the attorney himself was being examined. In this case the witness is an expert employed by the attorney. It is quite clear that the Supreme Court, while extending the privilege to the attorney in that case, did not establish a rule which would protect attorneys or their assistants in all cases. The opinion said:

"It is a problem that rests on what has been one of the most hazy frontiers of the discovery process".

The court says it is a matter that must be left to the sound discretion of the judge and indicates clearly that where "necessity" or "justification" are shown, "discovery may properly be had."

In order to meet the requirements announced in the Hickman case, counsel for the defendant point out that the information sought is essential to one of the vital issues of the case and that there is no other way or place to obtain the information. The pending suit in Tennessee involves U. S. Patent 1,744,016, and the defendant charges that such patent is invalid. It quotes paragraph 40 of the answer as follows:

"40. Defendant avers, on information and belief, that plaintiff, its attorneys, officers and agents, have known or have had reasonable cause to know, now and for many years past, that the statements made by Abram P. Steckel, the alleged inventor, the applicant and plaintiff's officer and agent, regarding a new manufacture embodying random orientation in United States Patent No. 1,744,016, were and are,

in whole or in part, untrue; that despite said knowledge, or reasonable cause for said knowledge, plaintiff has unreasonably neglected or delayed the filing of a disclaimer of the claims relating to said new manufacture embodying the alleged random orientation and the production thereof, and it has therefore failed to comply with the requirements of the disclaimer statute (R.S. 4917 [35 U.S.C.A. § 65]); and that therefore the said Patent No. 1,744,016 is wholly invalid and void."

It is admitted here, as it was in the Hickman case, "that the memoranda, statements and mental impressions in issue in this case fall outside of the scope of the attorney-client privilege and hence are not protected from discovery on that basis. * * * For present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation." (page 508)

This case developes a more acute issue than was presented by the Hickman case. The Supreme Court recognized that "It is essential that a lawyer work with a certain degree of privacy free from unnecessary intrusion by opposing parties and their counsel," etc. But the court also said:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning."

In view of all the circumstances it is pertinent to inquire whether if the case were being tried, the defendant would have the right to call George Sachs as a witness and put to him the questions asked at the taking of the deposition. It seems that such a procedure would have to be sustained and the witness would be directed to answer. As Justice Jackson said in his concurring opinion in the Hickman case:

"It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case."

In view of the issue involved in this case, no general exemption from examination can be allowed to the witness. It is the ruling of the court that he must answer relevant and proper questions pertinent to that issue.

Taking up the questions specifically: on page 18 of the depositions the witness was asked:

"Q. And what was the nature of those services, just the general nature?"

Since that question seems to have been answered (page 20 of the depositions), no ruling is necessary.

At page 20 of the deposition, the witness was asked:

"Q. Will you explain the procedure, technique, that you employed in doing this work?"

It is the ruling of the court that this question need not be answered. It is not shown that the procedure or technique is required. The witness should not be asked to divulge his methods unless it is absolutely essential to a determination of the issue.

At page 21 of the deposition the witness was asked:

"Q. From the standpoint only of your visual examination of these specimens, will you describe their nature?"

It is the ruling that this question should be answered.

At page 23 the witness is asked:

"Q. And how many of these specimens, approximately, would you say that there were?"

This question also should be answered. Next on the same page the question is asked:

"Q. How long did it take you to examine such a specimen?"

Objection to this question is sustained. Its relevancy does not appear.

At page 25 the witness is asked:

"Q. Did you determine the chemical composition of the specimens that you received from Mr. Webb?"

And "Q. Have the results of your examination of these specimens been conclusive as to those specimens? Just answer yes or no, please."

These questions should be answered.

At page 30 the witness is asked:

"Q. Now what was your objective in the making of these X-ray examinations?"

This question should be answered.

At the same page the witness is asked:

"Q. To the extent you have examined these samples or specimens have you achieved this objective?"

This question should be answered.

■ At page 31 the question is asked:

"Q. Now, among the metal specimens examined by you by these X-ray procedures, did you find any specimen of rolled sheet which had equiaxed small uniform size grains with random orientation?"

This question should be answered.

At the same page the witness was also asked:

"Q. Have you any time prior to this date orally or in writing, informed any counsel of Cold Metal Process Company or any representative or officer or other person connected with that company as to the facts observed by you in your examination of these samples?"

It is the ruling of the court that the witness should answer.

At the same page the witness was asked:

"Q. Have you in your experience ever discovered or observed an unannealed rolled metal sheet having equiaxed small uniform size grains with random orientation?"

This question should be answered.