**UNITED STATES of America, Petitioner,**

v.

**CERTAIN ACRES OF LAND IN DECATUR AND SEMINOLE COUNTIES, GEORGIA, and J. R. Sealy et al., Defendants.**

**Civ. A. Nos. 325–327.**

United States District Court M. D. Georgia, Thomasville Division.

April 26, 1955.

Frank O. Evans, U. S. Atty., Macon, Ga., Edwin G. Barham, Asst. U. S. Atty., Valdosta, Ga., for petitioner.

Conger & Conger, Bainbridge, Ga., Marvin G. Russell, Atlanta, Ga., for defendants.

BOOTLE, District Judge.

In this land condemnation proceeding, the property owner seeks to obtain information from the condemnor and from expert appraisers in its employ and service. Under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., the owner filed his motion for an order requiring the condemnor to produce and permit condemnee to inspect and to copy the appraisal reports made by these appraisers. That motion came on for hearing on February 14, 1955 and the Court, being of the opinion that there was no showing of good cause for the order requested, denied the motion.

Under Rule 33, the owner propounded to the condemnor thirty five interrogatories seeking detailed information as to the appraisals of these properties by the plaintiff's expert appraisers. The interrogatories seek such information as: were appraisal reports made? Did the reports list sales and offers of sale of nearby properties? What were these sales and offers of sale? Did the appraiser make a comparison of this property with such nearby properties? What was the comparison? Did he consider other comparable sales? What were such other sales? Was any special consideration given by the appraiser to approximately 100 acres of manufacturing sand? What was this value? Attach copies of appraisal reports. The United States moved to quash these interrogatories claiming in its motion that the information sought is of a privileged nature and character and contending also at the

hearing of the motion that the condemnor should not be required to disclose this information because it constitutes opinions formed by its retained experts. After argument, the Court sustained the motion and quashed the interrogatories.

Thereupon, the condemnee proceeded under Rule 26 and by way of cross-examination to take the deposition of Mr. O. K. Griffith, one of plaintiff's experts. The witness testified, without objection, substantially as follows: that he appraised all tracts here involved, giving the dates of said appraisals and also dates of his subsequent appraisals; that he determined the value per acre of the naked land; that he took into consideration all elements of value of the land, the land, the timber, gravel, minerals (gas and oil), and improvements; that the gravel was in the Chattahoochee river bed; he placed no value on gravel in Flint River or Spring Creek; he did not locate or consider as any special element 100 acres of sand; he was aware that estimated just compensation was paid into court in the amount of approximately $122,742; he was not present when Mr. George R. Irvine made his appraisal or appraisal reports; he never talked with him about his appraisal; he had seen a copy of Irvine's report; witness, in making his official report, took into consideration comparable sales; he inspected a right good area and right much of land to determine if the land was comparable to the land in question; all of his land appraising experience is worth something in making an appraisal; he first went to the court house records to determine the similarity in the location of the lands; he then made a physical inspection of the land he considered comparable to the land in question; the earliest date prior to November, 1952 he considered in reaching his comparable sales, limiting the question to tracts here involved, was 1945, the early part of 1945, within the first quarter of 1945, within the first month of 1945; he had no soil analysis made; he does not know that a soil analysis was made; he considered the soil classifications.

Acting upon the advice of counsel for the United States, the witness refused to answer the following questions: What was the value of the naked land? What was the entire value? What was the total valuation you placed on this tract? What valuation did you place on the gravel and where was it located? How much gravel was there? What improvements did you eliminate on your second report? Did your appraisals of April, 1952 and of September, 1954 reflect a difference of something over $23,000, (by reason of return to condemnee of 27.19 acres)? How does Irvine's report compare to yours? How many comparable sales did you take into consideration? What land did you inspect to see if it was comparable to this Sealy property? Did you go on some land that was sold by Cummings to Sheffield? Will you state the grantee and grantor in the earliest comparable sale you considered? What were the soil classifications that you had in making your soil classification? Did you take into consideration the fact that this property was being used as a hunting preserve? Did you place any special value upon the springs located upon that property?

The following colloquy occurred between counsel:

"Mr. Conger (Attorney for owner): Now, Mr. United States Attorney, I understand then that the necessity for asking any additional questions as to these tracts of land, if they have anything to do with his appraisal or his appraisal report, that we can just consider those as having been asked, and he refuses to answer.

"Mr. Evans (United States Attorney): That's right, anything relating to his appraisal or his report of the different theoretical bases on which his appraisal and report are made, his analyses pertaining to

them or comparison-s that he might be asked to draw between them. The only thing that we know of in this conjunction that would be germane and proper are such things as actual facts, particularly physical facts, such as the time of his appraisal and the time that he spent on them, and the visits that he made, the terrain that he covered and things similar to that."

After the suspension of the taking of the testimony, the plaintiff filed its motion "that an order be entered by the terms of which defendant will not be permitted to pursue the taking of said deposition any further as the same might relate to the appraisal made by the said O. K. Griffith and the reports prepared by him following his appraisal work."

The court requested able counsel for both sides to submit written briefs and arguments upon the questions here involved and is indebted to them for their having done so. Apparently, they have cited all available authorities upon these questions including several unreported rulings and decisions.

The question for decision boils down basically to the extent of discovery which will be ordered or permitted from an adverse party's experts. This question is dealt with exhaustively in Moore's Federal Practice, vol. 4, Par. 26.24, where the authorities are collected and analyzed. To review here all of these authorities would extend this memorandum unduly. While there is some conflict among the decisions, it appears that the majority of them support the plaintiff's contentions.

In Lewis v. United Air Lines Transport Corp., D.C.W.D.Pa., 32 F.Supp. 21, 23, it is said:

"To permit a party by deposition to examine an expert of the opposite party before trial, to whom the latter has obligated himself to pay a considerable sum of money, would be equivalent to taking another's property without making any compensation therefor. To permit parties to examine the expert witnesses of the other party in land condemnation and patent actions, where the evidence nearly all comes from expert witnesses, would cause confusion and probably would violate that provision of Rule 1 which provides that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.'"

In Boynton v. R. J. Reynolds Tobacco Co., D.C.D.Mass., 36 F.Supp. 593, 595, the Court says:

"But there are cases where the tender of compensation should have no such effect. An expert employed by one of the parties ought not to be compelled to furnish expert testimony to the other just because the latter offers him compensation. It is his privilege, if not his duty, to refuse compensation from one of the parties when he has already accepted employment from the other, and such refusal ought not of itself to result in his being ordered to testify.

" * * * as a discretionary matter, under the circumstances of the instant case, the defendant should not be permitted to obtain from an expert witness an opinion for which the plaintiff has to pay. Nothing here said is intended as an intimation that if the defendant had tendered a fee to the witness, who had declined it, any different result would have been reached."

In Hickey v. United States, D.C.E.D. Pa., 18 F.R.D. 88, it was held that in a condemnation proceeding the owner is not entitled to the names, addresses or positions of persons and firms from whom the Government obtained appraisals regarding their expert opinion as to the valuation of the property in question. The Court said:

"The matter here sought is the names, addresses and positions of persons and firms from whom the defendant obtained appraisals re-

garding their expert opinion as to the valuation of the property in question, which is the subject of condemnation. As has often been pointed out interrogatories serve two purposes, first to ascertain facts and to procure evidence, or to secure information as to where it obtains, and second, to narrow the issues. See Aktiebolaget Vargos v. Clark, D.C., 8 F.R.D. 635; United States ex rel. Tennessee Valley Authority v. Neal, D.C., 45 F.Supp. 382, at page 383.

"Here no fact is the subject of ascertainment but on the contrary the information here sought is the expert opinion of witnesses trained in the valuation of real estate hired by the defendant to fix a value and presumably to testify for them at the trial of the cause. While it is true that in many civil cases under our federal rules it is requisite for the adversary to help a litigant on the other side of the case in the developing of his side of the case, it always has to do with the facts as observed by witnesses to an occurrence or to a transaction and is not applicable to matters of expert testimony. Lewis v. United Airlines, etc., D.C., 32 F.Supp. 21. In fact where an expert employed by one of the parties to a cause of action has been requested to furnish his expert testimony to another, it is not only his privilege but his duty to refuse compensation from one of the parties where he has already accepted employment from the other and such refusal ought not of itself to result in his being ordered to testify."

And in an opinion, Judge Frank A. Hooper of the Northern District of Georgia, on October 18th, 1954, in the case of: United States of America v. 7,534.04 Acres of Land, More or Less, D.C.N.D.Ga., 18 F.R.D. 146 said:

"The remaining interrogatories in effect seek to obtain information as to the name of the Government's appraisers, copies of their appraisals, method of appraisals, a breakdown of values, etc.

"In a case such as this, the burden of proof is upon the property owner to prove the value of the land in question. Value of land is primarily a matter of opinion, which no doubt the Government, as well as the property owners, will prove to a large extent by expert witnesses. The land is open to inspection by all parties, no information concerning the same is sought from the Government that is not readily available to the defendants. The information sought therefore, is necessarily information obtained by the Government in preparation of the trial of the case and in the opinion of this court is not obtainable by interrogatories. See Lewis v. United Air Lines Transport Corporation, D.C., 32 F.Supp. 21; General Motors Corp. v. California Research Corp., D.C., 8 F.R.D. 568(3)."

After reviewing the authorities, the author of Moore's Federal Practice says the correct rule is as follows:

"The court should not ordinarily permit one party to examine an expert engaged by the adverse party, or to inspect reports prepared by such expert, in the absence of a showing that the facts or the information sought are necessary for the moving party's preparation for trial and cannot be obtained by the moving party's independent investigation or research. However, since one of the purposes of the Federal Rules as stated in Rule 1 is to facilitate the inexpensive determination of causes, the court should have discretion to order discovery upon condition that the moving party pay a reasonable portion of the fees of the expert." Moore's Federal Practice, Vol. 4, Par. 26.24, page 1158.

The orders of February 14, 1955 denying production of documents and quashing interrogatories are left unchanged,

the property owner in his briefs having asked for a reconsideration thereof, and the plaintiff's request for a protective order is hereby granted as prayed. The deposition of the witness, O. K. Griffith, shall not be pursued further insofar as the same might relate to the appraisals made by the plaintiff's expert appraisers or to the reports prepared following the appraisals, or to the contents of such reports.