**UNITED STATES of America,
Petitioner-Plaintiff,**

v.

**19.897 ACRES OF LAND, MORE OR LESS, Situated IN the TOWN OF ISLIP, COUNTY OF SUFFOLK, STATE OF NEW YORK, and Salvatore Fusco, et al., Defendants.**

**Civ. 60–CD–853.**

United States District Court
E. D. New York.
March 3, 1961.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Robert Mulcahy, Mineola, N. Y., for Salvatore Fusco and others, Joseph F. Soviero, Jamaica, N. Y., of counsel.

ZAVATT, District Judge.

The plaintiff has condemned 19.897 acres of land in Suffolk County, owned by the defendants Salvatore and Concetta R. Fusco, for use as the site of a Remote Transmitter for International Flight Service Station to serve civilian aircraft on international flights. It has deposited into the Registry of the Court the sum of $68,200 which the taking agency of the government has estimated to be fair compensation for the taking. Immediate possession was granted to the plaintiff by an order of the court dated September 12, 1960. Pursuant to an order of the court, dated December 28, 1960, the Clerk paid the said deposited sum of $68,200 to the defendants Fusco, without prejudice to the rights of the defendants to pursue their legal remedies to

establish the fair and reasonable value of the damage parcel.

The defendants propounded interrogatories to the plaintiff, pursuant to Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A., seeking (1) the names of the persons who have made appraisals of the property for the plaintiff; (2) the date of each such appraisal; (3) copies of all such appraisal reports; (4) a list of sales relied upon by the appraisers in evaluating defendants' land; (5) the value of defendants' land as appraised by each appraiser; (6) a detailed statement of the qualifications of each such appraiser; (7) an itemized list of all condemnation cases concerning real property in the Town of Islip, Suffolk County, New York, in or with reference to which each such appraiser made an evaluation report and/or testified during the past two years; (8) the agency or party for whom each such appraiser made such a report and/or testified during the past two years.

The plaintiff has moved for an order "disallowing the interrogatories", presumably under Rule 33, Federal Rules of Civil Procedure, claiming that the defendants seek "opinions, conclusions and legal contentions of experts employed by the government in preparation for possible litigation which has now ensued. * * * " The opposing affidavit of the defendants reveals that the defendants learned, during negotiations with the plaintiff, that the plaintiff had retained the services of two appraisers (names not revealed in the affidavit) who valued the property at $63,000 and $73,400, respectively, in written reports to the plaintiff. As the affidavit states, "Defendants already know what these opinions are, to the penny." The defendants also retained an expert who has reported to them that, in his opinion, the value of the land is $101,935. It is because of the wide divergence of expert opinion as to value, say the defendants, that they propounded the interrogatories "in an attempt to reconcile these differences."

What the defendants seek, they say, is "the factual processes by which these experts arrive at these conclusions." The defendants assume that the process of arriving at an opinion as to the value is purely factual and that the critical fact is the price at which comparable property was sold. They contend that the opinions of the plaintiff's experts are based almost exclusively upon "comparative sales of other properties in the locality." They demand to know, therefore, upon what particular sales the opinions of plaintiff's experts are based in order that they may evaluate the accuracy of the appraisals by the plaintiff's experts as well as by their own experts. They contend that "it is relatively impossible for the defendants to ascertain" the particular comparative sales upon which the plaintiff's experts rely other than by means of discovery. And they argue that to demand a list of comparable sales is not to demand the thought process of an expert but, rather, to call for facts.

The defendants also want to know who the plaintiff's experts are; what their experience has been; in what matters they have given expert opinions as to value so that "before they risk a trial of the issues, the defendants" may "have an opportunity to evaluate the calibre of experts that they will be called upon to face. It may well be that, forewarned by this information, defendants would be more inclined to settle, rather than litigate the issues." They acknowledge that the valuation of real estate is "an inexact science where a wide area of judgment and discretion is involved;" that not infrequently an agent "will 'go overboard' for his principal, especially in areas such as real estate appraisals." And it is for that reason, say the defendants, that they need information as to previous appraisals of other properties made by the plaintiff's experts. They liken a real estate appraisal (inexact though they concede it to be) to "experimental procedure by which an expert assays a sample of metal."

The defendants are in error when they assume that it is ever possible for litigants, courts or juries to reconcile the widely divergent views of real estate experts as to value. The issues as to value are not reconciled. Rather, the trier of the fact believes one extreme or the other or, more frequently, finds fair and reasonable market value at some intermediate point between the polar extremes. It is possible to take two views of the same scene—one with backlight that brightens up every corner of the field of view and one with frontlight that accentuates and emphasizes large areas of deep shadow. Is it a mere coincidence that, invariably, the high appraisal is that of the expert for the property owner and the low appraisal is that of the expert for the condemnor? Does not the appraiser for the property owner invariably take the optimistic view, see value as through rose-colored glasses, while the expert for the condemnor is pessimistic, viewing value as through dark, smoky lenses? Invariably, there is wide divergence of views as to value, so wide, in fact, that one experienced in the condemnation field might see relative unanimity in plaintiff-defendants' appraisals that are as close as $73,400 to $101,935.

The defendants are in error when they assume that any appraiser will testify that his opinion as to value is based (exclusively or primarily) upon sales of comparable properties. He may be forced to admit that he has taken such sales into consideration in arriving at an opinion as to the value of the defendants' property but he can hardly be expected to *base* his opinion on any sale or sales of other real estate. Each parcel of real estate is unique. There is not another exactly like it. It is unique as to location, dimensions, improvements, the most appropriate permitted use, etc., etc. It is this very unique aspect of each parcel of real estate that affords one the right to specific performance. Other parcels may be comparable in some but not all respects. Some of them may be more comparable than others—as, in Orwell's "Animal Farm," where all animals were equal but some were more equal than others.

The defendants are in error when they assume that the opinion of an appraiser as to the value of a particular parcel of real estate at a given time rests only on sales of so-called comparable parcels. There are other factors that lead to an educated guess (the expert's opinion) as to the price at which a willing purchaser would have purchased and a willing seller would have sold a particular parcel of real estate at a particular time in a free market in an arm's length transaction.

What parcels of real estate can possibly lie within the ambit of comparison with the damage parcel should be known as well to the defendants' appraiser as to those of the plaintiff, unless (as the opposing affidavit seems to imply) the defendants may have some misgivings as to the reliability of their own appraiser's opinion. Nevertheless, it would tend to shorten the trial if both sides knew in advance of the trial what sales of other properties each party may contend on the trial can possibly be relevant to the issue of value of the damage parcel. Such advance notice would afford each party the opportunity to examine all such parcels and inquire into the terms and conditions of each sale before the trial for the purpose either of supporting or attacking the weight to be given to the same by the trier of the fact, without committing either party to state now what particular factor or factors will be relied upon by their experts to support their respective opinions. For it must be noted that, at this juncture, neither party may be absolutely certain as to whom it will call to give expert testimony on the trial.

The extent of permitted discovery of an adverse party's experts is dealt with in Moore's Federal Practice, vol. 4, Par. 26.24. While there is some conflict among the decisions, it appears that the majority of them support the

plaintiff's contention that the propounded interrogatories in the instant case should not be allowed. See also United States v. Certain Acres of Land, D.C.M.D.Ga.1955, 18 F.R.D. 98; United States ex rel. T. V. A. v. Bennett, D.C.E.D.Tenn.1953, 14 F. R.D. 166; United States ex rel. T. V. A. v. Neal, D.C.E.D.Tenn.1942, 45 F.Supp. 382; United States v. 2,027.39 Acres of Land, (D.C.Ark.So.Div., Civil No. 949 S.D., March 7, 1955) unreported; United States v. 1,000 Acres of Land, (M.D.Pa., Civil No. 3922, August 18, 1953) unreported. Contra, United States v. 50.34 Acres of Land, D.C.E.D.N.Y.1952, 13 F. R.D. 19, decided by my illustrious predecessor, Judge Galston, in whose opinion I regret to say I cannot concur. Further, Rule 33 under which the defendants have propounded their interrogatories contains no authority for production of documents. This court has announced that it will not order production of documents except upon a proper showing made by motion under Rule 34. Harris v. Marine Transport Lines, D.C.E.D.N.Y.1958, 22 F.R.D. 484. In the instant case, even had the defendants so moved the court would not have granted such a motion, supported by the defendants' opposing affidavit now before the court, upon the ground that the defendants had failed to show the requisite good cause.

 The plaintiff will furnish to the defendants a list of sales of real property which it will or may contend on the trial have been taken into consideration or should be taken into consideration in arriving at the alleged fair and reasonable value of the damage parcel. The defendants will furnish a similar list to the plaintiff. Each such parcel shall be identified by the names of the seller and purchaser; the location of the property; the date of the closing deed; the date, liber and page of recording of the deed. . These lists shall be exchanged simultaneously on or before 30 days before the date fixed for trial. Upon the trial neither party will be permitted to offer evidence of any sales of alleged comparable parcels,

not included in the lists furnished pursuant to this order, except by an order of the court granted upon a showing of good cause why any such parcel was not included in said lists. But either party will be permitted to offer evidence of any sale or sales which shall have occurred within 30 days before the date fixed for trial. The testimony of a witness as to his opinion or estimate of value shall be incompetent if it shall appear that such opinion or estimate took into consideration and reflects to any degree a sale of any property not so listed, except a sale or sales that may have occurred within 30 days before the date fixed for trial and a sale or sales as to which the court has granted such an order upon a showing of good cause.

Except as hereinabove directed, the plaintiff's motion is granted. Settle an order on or before ten days from the date hereof.