UNITED STATES of America,
Plaintiff,

v.

23.76 ACRES OF LAND, MORE OR LESS, Situate IN ANNE ARUNDEL COUNTY, STATE OF MARYLAND, and Marguerite Lobeck Labrot Parr, et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

27.68 ACRES OF LAND, Situate IN ANNE ARUNDEL COUNTY, STATE OF MARYLAND, and Marguerite Lobeck Labrot Parr, et al., Defendants.

Civ. Nos. 7784, 8299.

United States District Court
D. Maryland.

May 14, 1963.

Joseph D. Tydings, U. S. Atty., J. Edward Davis, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Arthur G. Lambert, Washington, D. C., Charles C. Wallace, Baltimore, Md., S. Churchill Elmore, Washington, D. C., for defendants.

Rignal W. Baldwin, Baltimore, Md., amicus curiae.

WINTER, District Judge.

In these two condemnation cases the United States, by its separate declarations of taking, filed the same day as its complaints for condemnation, has taken title in fee simple, and certain lesser estates, to a tract of land containing in the aggregate, approximately 50 acres located within two larger tracts of land owned by the defendants. The takings were for the purpose of the establishment of a ballistic missile launching site complex, otherwise known as a "NIKE" site.

As the cases proceeded to trial on the issue of compensation, the defendants filed a notice to take the deposition of Mr. Richard B. Hall, a real estate appraiser engaged by the government to examine and evaluate the interests taken. His deposition began on December 14, 1962 and, during its course, he was instructed by representatives of the government not to respond to certain questions which were put to him. By timely motion, the defendants seek an order directing the witness to answer these questions:

1. "Without disclosing your opinion as to the total value of these lands in your appraisal, would you describe the method you used or employed to reach your appraisal?"

2. "Would you state the market transactions that you investigated which you considered most comparable to the property involved here?"

3. "Are you personally acquainted with what is done in the development and maintenance of a NIKE site?"

4. "In any way has your opinion been affected by the conducting of [operations carried on at a NIKE site], what is to be carried on there, as to its relationship to the value of the remaining portions?"

5. "Have you been given information by the United States Government which is predicated on this proposal, relating to the line of sight clearance area?"

6. "What was it that you were advised that you must consider as a restriction in those [easement] areas?"

7. "Did you consider, Mr. Hall, the presence of the NIKE site there has any effect on the remaining property?"

8. " * * * I would like now to ask you what your opinion was as to whether it was a disadvantage to the remaining land to have the NIKE site there?"

9. "Did you conclude that there was or was not [severance damages]?"

10. "Were you informed or did you make inquiry to find out the size of the personnel that would be operating the site in connection with your evaluations?"

11. "Were you given any information as to whether the areas of the site would be lighted at night?"

12. "Were you given any information as to whether there would be any explosives of any nature stored on the site?"

13. "What did you consider the highest and best use of the property?"

■ Defendants' motion raises the general question of the right to discovery as to facts considered, mental processes, opinions, and credibility of an expert as to valuation in a land condemnation case. Since August 1, 1951, the effective date of Rule 71A, F.R.Civ.P., these questions are to be decided by appropriate rules of

the Federal Rules of Civil Procedure and the decisions of the Federal Courts thereunder, United States v. 3,065.94 Acres of Land, Etc., 187 F.Supp. 728 (D.C.S.D. Cal.1960).

An examination of the unanswered questions indicates that they fall into several groups. Questions 2, 5, 6, 10, 11 and 12 fall into the category of "facts considered," in that they seek to elicit from the expert the factual basis furnished to him, or which he obtained, as a starting point in formulating his opinion. However, question 2, to the extent it seeks "most comparable" sales, delves into the expert's mental processes and opinion and will also be considered, in those categories. Question 3 is really a question which may be considered as part of the first category, but also goes to the credibility of the expert. Questions 1, 2, 4 and 7 seek to explore the expert's mental processes in formulating an opinion as to value by asking if he considers certain facts to have a bearing or an effect on the question of valuation. Questions 2, 4 and 7, to a lesser extent, together with questions 8, 9 and 13, to a greater extent, seek the discovery of the expert's opinion on some aspect of value, but they fall short of asking the expert to state his ultimate conclusion as to the valuation which he would place upon the interests taken. It may be noted also that questions 3 and 4 are somewhat inartistically phrased, in that they may be construed to apply to NIKE sites generally, or to this NIKE site in particular. They will be treated as the latter because it is only with regard to this site that the test of relevancy for purposes of discovery is met.

By analogy to Leszynski v. Russ, 29 F.R.D. 10 (D.C.Md.1961), defendants' right to discover certain of the information elicited may be summarily disposed of. In the Leszynski case, Chief Judge Thomsen established, in regard to a medical expert in a personal injury case, the rule which has consistently thereafter been followed in this district. Adopting the Massachusetts rule, as set forth in Currie v. Moore-McCormack Lines, 23 F.R.D. 660, 661 (D.C.Mass.1959), Chief Judge Thomsen stated the general rule that where an injured person submits to medical consultation or examination for treatment, the defendant is entitled to a copy of the reports which include the doctor's diagnosis and prognosis, but, where there is any medical examination solely for the purpose of preparing for trial, the defendant is entitled only to a statement of any history given to the doctor. In regard to the latter, however, where the plaintiff claimed extensive injury, Chief Judge Thomsen directed the disclosures of the details of the examination (excluding the doctor's diagnosis, impression and prognosis), as well as the history of the patient obtained by the doctor.

█ Based upon this decision, the group 1 questions (Nos. 2, 5, 6, 10, 11 and 12) should be answered, since they involve nothing more than the disclosure of the "history" obtained and acted upon by the appraiser in formulating his ultimate opinion. Question 3 should also be answered, for the same reason and because it seeks to determine if the appraiser took into consideration a fact which at trial may be shown to be relevant to the formulation of an ultimate opinion.

█ Affording the Leszynski case a liberal interpretation, I am of the view that the questions in the third group (Nos. 1, 2, 4 and 7) are also proper. They seem to fall into the category of "Details of the Examination" of the injured person which Chief Judge Thomsen required to be disclosed in the Leszynski case, to the extent they inquire into the expert's method of appraisal.

It is the questions falling into the fourth category (Nos. 2, 4, 7, 8, 9 and 13) which present greater difficulty. There is direct or analogous authority for requiring such questions to be answered, Cold Metal Process Co. v. Aluminum Co.

of America, 7 F.R.D. 425 (D.C.N.D.Ohio 1947), aff'd. sub nom., Sachs v. Aluminum Co. of America, 167 F.2d 570 (6 Cir. 1948); United States v. 62.50 Acres of Land, Etc., 23 F.R.D. 287 (D.C.N.D. Ohio 1959); United States v. 1,278.83 Acres, Etc., 12 F.R.D. 320 (D.C.E.D.Va. 1952); United States v. Certain Parcels of Land, Etc., 15 F.R.D. 224 (D.C.S.D. Cal.1954); United States v. 50.34 Acres of Land, Etc., 13 F.R.D. 19 (D.C.E.D. N.Y.1952).

Conversely, there are numerous cases which deny discovery of opinions of experts in condemnation cases, even opinions short of actual value. Included in this line of authority are Lewis v. United Air Lines Transport Corporation, 32 F.Supp. 21 (D.C.W.D.Pa.1940); United States v. 6.82 Acres of Land, Etc., 18 F.R.D. 195 (D.C.New Mex.1955); United States v. 7,534.04 Acres of Land, Etc., 18 F.R.D. 146 (D.C.N.D.Ga.1954); United States v. Certain Acres of Land, Etc., 18 F.R.D. 98 (D.C.M.D.Ga.1955); Hickey v. United States, 18 F.R.D. 88 (D.C.E.D. Pa.1952); United States v. Certain Parcels of Land, Etc., 25 F.R.D. 192 (D.C. N.D.Cal.1959). Cf. United States v. 284,392 Square Feet of Floor Space, Etc., 203 F.Supp. 75 (D.C.E.D.N.Y.1962) (allowing discovery as to facts only but ruling that term "facts" should be given a liberal interpretation), and United States v. 19.897 Acres of Land, Etc., 27 F.R.D. 420 (D.C.E.D.N.Y.1961) (allowing only an exchange of comparable sales).

An analysis of these cases shows that discovery was denied for one or more of the following reasons: (1) discovery would destroy the attorney-client privilege; (2) discovery would violate the attorney-work product rule; (3) discovery would result in unfairness to the party from whom discovery is sought, in that it is unfair for that person to pay the cost of obtaining expert knowledge and opinions and require him to disclose them to his opponent; (4) discovery would result in confusion; and

(5) the information sought to be discovered was equally available to the person seeking it.

■ The grounds of confusion and availability of information as reasons for denying discovery are neither persuasive nor applicable. The basic purpose of discovery is to prevent confusion, and it does not appear to me how full discovery, even discovery of an opinion of ultimate value, if permitted, could possibly result in confusion. It is the rare law suit in which there are not at least two versions of a single transaction or occurrence. The purpose of discovery is to permit each party to learn of the other party's version. That the versions may conflict creates a question for the trier of the fact, but hardly creates a basis to refuse discovery.

■ From the very nature of the questions eliciting opinions sought to be answered, there is no basis to believe that the information sought to be elicited, since it is subjective in nature, might be obtained by the defendants except by the questions being answered by the only person, the expert, who has such information. It is to be noted in this regard that one of the express uses of depositions is that of cross-examination, Rule 26(d)(1), and it needs no citation of authority to say that an expert is the most difficult witness to cross-examine, particularly if one is unaware until trial of the substance of his testimony.

The first two reasons, principally relied upon in the earlier cases, the attorney-client privilege and the attorney-work product rule, have little support in recent authorities, Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Cold Metal Process Co. v. Aluminum Co. of America, supra, aff'd. sub nom., Sachs v. Aluminum Co. of America, supra; United States v. Certain Parcels of Land, Etc., 15 F.R.D. 224, supra; United States v. 50.34 Acres of Land, Etc., 13 F.R.D. 19, supra; 2A Barron and Holtzoff, Federal Practice and Procedure (1961 Ed. and 1962 Pocket Parts), § 652.5, pp. 153–

158 and p. 19 of Pocket Part; 4 Moore's Federal Practice (1962 Ed.), ¶ 26.24, p. 1528; Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 488 (1962).

By the more modern and better-reasoned cases, discovery in this area, if denied, is denied on the ground of unfairness, 4 Moore's Federal Practice (1962 Ed.), ¶ 26.24, at p. 1523. Any discussion of unfairness should begin with a consideration of the issues presented in a federal condemnation case. Unlike certain states and political subdivisions, there is no obligation on the federal government, as a condition precedent to the exercise of the power of eminent domain, to negotiate with the property owner and to demonstrate in court that the property owner has been offered just compensation, but has refused the same. Rather, the federal government may institute a suit in condemnation without notice to the property owner and, indeed, as in this case, by filing a declaration of taking and depositing a sum in the registry of the court, obtain title on the same day to the interest in land sought to be acquired before the property owner is aware that his sovereign requires his property. After suit is begun in this manner, it is also true that the sole issue for the jury and, in the vast majority of cases, the sole issue in the case, is one of just compensation. While it is a convenient fiction that the property owner knows the value of his own property, in most cases the statement is pure fiction and, in a case such as the one at bar, where interests less than a fee interest are taken, as well as an interest in fee, and where quantitatively portions of larger tracts are taken so that there is good ground to suspect that there may be severance damages, the litigation becomes a battle of experts.

Where value is the basic, if not sole, issue in litigation, it is not unfair for either party to know in advance of trial what the other party intends to prove, what opinions his opponent's experts hold, the method by which those opinions were formulated, and the facts upon which they are based. These are all matters to be presented to the trier of the facts at trial. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. * * * The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise," Hickman v. Taylor, supra, 329 U.S. p. 507, 67 S.Ct. p. 391.

As the government stresses in this case, the unfairness rule is to be determined by federal law and not by state law, yet the Court cannot disregard that, under Maryland law and in Maryland state courts, full discovery as to expert witnesses is permitted in condemnation cases, and the results have been that the issues are sharpened and pointed, trial time is reduced, and settlements are encouraged. The Court cannot countenance the argument advanced by the government that discovery, if permitted, will enable property owners to "manufacture" an appraisal to take advantage of the government's weaknesses and contradict its strength. This argument is a general attack on the concept of discovery, not limited to this case, and it comes too late to merit any consideration.

If unfairness is said to result from the obligation of a party to compensate his expert for time consumed while having his testimony taken by deposition, that unfairness can be avoided by requiring the party taking the deposition to compensate the expert as a condition precedent to the taking of the deposition, Rule 30(b), F.R.Civ.P. If unfairness is said to result because one party desires to adopt as his own the expertise paid for by the other party, that abuse of discovery, too, can be countered, cf. United States v. 50.34 Acres of Land, Etc., 13 F.R.D. 19, supra.

While perhaps numerically fewer, this Court is more persuaded by the cases

which would permit the discovery sought here. On their authority, and particularly that of United States v. 62.50 Acres of Land, Etc., 23 F.R.D. 287, supra, I believe that where the issue to be litigated is value and where value is to be litigated through expert witnesses, the best way to avoid unfairness and to secure "the just, speedy, and inexpensive determination of every action," Rule 1, F.R.Civ.P. is to make the expert data, opinion and material sought here discoverable. For these reasons, counsel for the defendant may prepare an order directing Mr. Hall to answer the 13 questions set forth above.