UNITED STATES of America, Plaintiff,

v.

364.82 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF MARIPOSA, STATE OF CALIFORNIA, Horace Meyer, County of Mariposa, and Unknown Owners, Defendants.

Civ. No. 8847.

United States District Court N. D. California, N. D.

Oct. 27, 1965.

**412**

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for plaintiff.

C. Ray Robinson, Merced, Cal., for defendant Horace Meyer.

HALBERT, District Judge.

In this action to condemn land located within the boundaries of Yosemite National Park, for the use and development of the park, plaintiff United States of America seeks a protective order under Rule 30(b) of the Federal Rules of Civil Procedure prohibiting the taking of depositions from Government appointed land appraisers. The Government requests an order prohibiting inquiry into the following: (1) the appraiser's opinion of the value of the property; (2) the appraiser's opinion of the highest and best use of the property; (3) any matter of opinion, or conclusion reached upon consideration of facts ascertained by the appraiser; (4) any written reports that the appraiser may have submitted to any agency of the United States Government; and (5) any matter presumably within the knowledge of the defendants. In addition, the Government seeks immunity for their appraisers from examination for the purpose of cross-examination at the trial. The briefs in support of, and in opposition

to, the motion have been submitted and the Court has considered the matters there presented.

This case in substance presents two basic issues: (1) may an expert land appraiser's report be made the subject of discovery? and (2) if it is subject to discovery, what limitations if any should be imposed upon the scope of such discovery? The authority in regard to those questions is at once meager and conflicting.

*Discovery of Expert Opinion*

Prior to the development of the Federal Rules of Civil Procedure, discovery in the federal system was governed by Title 28 U.S.C. §§ 639 et seq. (Committee Note, Note to subdivision (a) of Rule 26; 4 Moore's Federal Practice 1012). As a matter of practice, however, the old methods of discovery were found to be unsatisfactory and with the initiation of the Federal Rules came a consolidation and expansion of discovery procedures. The purpose underlying that consolidation and expansion was, in the words of Mr. Justice Douglas, to

"* * * make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. * * * Only strong public policies weigh against disclosure." (United States v. Procter & Gamble Co., 356 U.S. 677, 682–683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077)

Notwithstanding the salutary purposes expressed by Justice Douglas, the early days of discovery under the Federal Rules were characterized by a paucity of Supreme Court guidance. Not until the decision in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, did the Supreme Court attempt to formulate definitive standards for the control of discovery procedures. In Hickman the Court unanimously affirmed the holding of the Court of Appeals that reversed the order of the

District Court sustaining the right to discovery of certain documents. The opinion of Mr. Justice Murphy, while denying discovery on the peculiar facts of that case, reaffirmed the necessity for a liberal treatment of the rules relating to discovery in the federal courts. Discovery is permissible and proper, said the Court, in those cases "where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case * * *." (329 U.S. at 511, 67 S.Ct. at 394). The emphasis thus placed upon facts by the decision in Hickman has become characteristic of discovery procedures, but the courts have not been altogether consistent in their determination of which matters are "factual" and thus discoverable without a "substantial showing of 'necessity or justification.' " (Wright, Federal Courts, pg. 314).

Expert opinion in general has caused no little degree of difficulty in that regard. In fact, at one time the Advisory Committee on Amendments to the Federal Rules of Civil Procedure recommended that the conclusions of experts be given immunity from discovery (See: Armstrong, Report of Advisory Committee, 5 F.R.D. 339, 356) but the amendment was not adopted by the Supreme Court. As a result, the District Courts have been left much to their own devices, with a resultant diversity of opinion in regard to discovery of expert opinion. Some courts have refused to allow discovery of any conclusion or opinion whatsoever (See, e. g., Moran v. Pittsburg-Des Moines Steel Co., D.C., 6 F.R.D. 594; Lewis v. United Air Lines Trans. Corp., D.C., 32 F.Supp. 21; and United States v. 6.82 Acres of Land, etc., D.C., 18 F.R.D. 195), while other courts have allowed discovery of facts upon which the expert bases his opinion, but not discovery of the opinion itself (See, e. g., Walsh v. Reynolds Metals Co., D.C.,

15 F.R.D. 376; United States v. Certain Parcels of Land, etc., D.C., 15 F.R.D. 224; and People v. United States, D.C., 27 F.R.D. 261). Still a third group of courts has gone the full route and allowed discovery of the final opinion of an expert as well as the facts upon which that opinion is based (See, e. g., Bergstrom Paper Co. v. Continental Ins. Co., D.C., 7 F.R.D. 548; Sachs v. Aluminum Co., 6 Cir., 167 F.2d 570; United States v. 50.34 Acres of Land, etc., D.C., 13 F.R.D. 19; and United States v. 23.76 Acres of Land, etc., D.C., 32 F.R.D. 593).

While expert opinion varies in degree of significance according to the matters contested at the trial, there is little doubt that in eminent domain cases it occupies a particularly significant position. Almost always the value to be placed upon the taken property is the sole issue before the court, and the opinions of the experts constitute the sole evidence upon which a conclusion can be reached. In view of that fact, it is of particular importance that the procedures surrounding discovery in such proceedings be fair to all concerned.

The rationale behind the eminent domain power is that in certain circumstances public necessity must take precedence over individual property rights (United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 280, 63 S.Ct. 1047, 87 L.Ed. 1390). The exercise of that power, however, carries with it the correlative duty to protect individual rights to the fullest possible extent (United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539). Whether discovery of expert opinion is necessary to that protection is the question presented by the motion now before me.

Of the substantial number of District Court opinions denying the discovery of expert opinion in eminent domain pro-

ceedings,[1] the decision of Judge Mathes in United States v. Certain Parcels of Land, etc., D.C., 15 F.R.D. 224 is perhaps the most complete. While Judge Mathes would allow discovery of factual matters contained in an expert's report, he would stop short of allowing discovery of the expert's opinion of the value of the land on the ground that such opinions

> "are and will remain wholly incompetent and immaterial as evidence unless and until the appraisers are called as witnesses upon the trial and are shown to be experts qualified and prepared to give competent opinion testimony as to the value of the property in controversy." (15 F.R.D. at 233)

■ Under a strict construction of Rule 26(b) the opinion of an expert is, until he is qualified by the court, not "admissible evidence." But it does not follow that it cannot lead to such evidence. In fact, if the parties have chosen their experts well, it is indeed likely that those experts will be qualified and will testify at the trial. Moreover, the liberal construction of the Federal Rules, demanded by Rule 1, and supported by numerous judicial decisions, militates against a literal construction of such collateral matters. I hold, therefore, that Rule 26 constitutes no impediment to discovery of expert opinion in eminent domain cases.

A second ground discussed by Judge Mathes, and considered in other cases (See, e. g., United States v. Certain Acres of Land, etc., D.C., 18 F.R.D. 98, and cases cited therein), is that the opinion of an expert should be subject to a qualified privilege similar to the "work product" privilege announced in Hickman v. Taylor, supra. Professor Friedenthal has observed in that regard:

> "Unlike the attorney's impressions or those of the client or his investigators as to the value of certain evidence or the veracity of a potential witness, the opinions and conclusions of an expert constitute evidence in themselves, and may be the only way in which to establish facts material to the case. Indeed, the report of an expert to the attorney is sought for the purpose of obtaining such facts and it can hardly be said that once in the hands of the attorney the information becomes 'protected conclusions' any more than does an eyewitness account by any other witness. * * * the only danger is that the expert might trip himself should he change his testimony at the trial." (Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.Law Rev. 455, 472–473) [2]

■ While the facts of the Hickman case limit that opinion to work actually performed by the attorney himself, the Court of Appeals for the Third Circuit in Alltmont v. United States, 177 F.2d 971, extended the privilege to all "statements of prospective witnesses which a party has obtained for his trial counsel's use." The Alltmont rule has not been accepted by all courts (See, e. g., People of State of California v. United States, D.C., 27 F.R.D. 261) but even assuming arguendo that it does express the proper rule, it does not necessarily follow that expert

---

1. The cases are collected in an exhaustive survey of the precedent up to 1963 in the excellent opinion of Judge Winter in United States v. 23.76 Acres of Land, etc., D.C., 32 F.R.D. 593.

2. C.f., Lewis et al. v. United Air Lines Transportation Corp., D.C., 32 F.Supp. 21, 23:

> "To permit parties to examine the expert witnesses of the other party in land condemnation and patent actions, where the evidence nearly all comes from expert witnesses, would cause confusion and probably would violate that provision of Rule 1 which provides that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.'"

opinion is immune from discovery. The Hickman case did not hold that matters subject to the "work product" privilege were immune—Hickman merely held that such matters were discoverable only on a showing of "necessity or justification." (329 U.S. at 510, 67 S.Ct. at 393; and see, 2A Barron & Holtzoff, Federal Practice and Procedure, § 652.4) I am inclined to think that such necessity or justification is implicit in every eminent domain case.[3] There is nothing sacred about the rights of the Government in eminent domain proceedings. The Government ought to be as frank, fair and honest with its citizens as it *requires* its citizens to be with it.[4] That fairness will be enhanced by full disclosure of all matters that will expedite trial or encourage out-of-court settlements. I am now persuaded that the true and proper rule is the one laid down by the Court in United States v. 23.76 Acres of Land, etc., D.C., 32 F.R.D. 593, as follows:

> "Where value is the basic, if not sole, issue in litigation, it is not unfair for either party to know in advance of trial what the other party intends to prove, what opinions his [opponent's] experts hold, the method by which those opinions were formulated, and the facts upon which they are based." (32 F.R.D. at 597)[5]

The Government in support of its motion for a protective order has come forward with a number of technical arguments against discovery in cases such as these. While I am aware that I have adhered to those arguments in the past (See: United States v. 3595.90 Acres of Land, etc., unreported memorandum of November 28, 1961, Civil No. 8065), I am now prepared to change my position. It has been said that "wise men seldom change their minds, but fools never do." I have considerable doubt that my opinion in this case will make me wise, but I am prepared to have a go at it. I am of the view that full discovery of expert evaluation of land in eminent domain cases is fully consistent with the ideal of liberal construction of the Federal Rules expressed by the Supreme Court in Hickman v. Taylor, supra. To allow the participants to know what the other party intends to prove goes no further than the pleading requirements of Rule 8, by which a party is required to state the relief to which he deems himself entitled. Where money value is the only question to be resolved (at least before a jury), it seems patently foolish to cling to wooden concepts of "privilege" which more often than not obscure rather than illuminate. It goes without saying, however, that the allowance of discovery in these matters must cut both ways. The Government as well as the condemnee is entitled to know what the other intends to prove.

*Limitations on Discovery*

One matter which has been of concern to the courts that have considered the problem has been the matter of compensation of the expert. Some courts have refused to allow discovery solely on the ground that it would be taking private property without compensation (See, e. g., Hickey v. United States, D.C., 18 F.R.D. 88), while others have attempted to obviate that objection to discovery by requiring the discovering party to pay a part of the expert's fee (See, e. g., United States v. 50.34 Acres of Land, etc., D.C., 13 F.R.D.

---

3. Compare, 4 Moore's Federal Practice § 26.24 at pg. 1535:
   "In a few cases, the courts have recognized that the opinions or techniques of experts may be central to the litigation and therefore subject to discovery."

4. For example, no one would seriously question the propriety of Government discovery, at least for impeachment purposes, of the landowner's belief as to value (Compare Sinclair Refin. Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449).

5. Compare, footnote 2, supra.

**416**

19). The objection to the latter method has been that cross-compensation is an unwarranted intrusion into the relationship between the attorney and his hired experts (See: Hickey v. United States, supra; and Boynton v. R. J. Reynolds Tobacco Co., D.C., 36 F.Supp. 593). That objection is based upon the implied premise that the lawyer has the right (and mayhaps the *duty*) to keep his expert under wraps until the trial date. Without expressing a view in regard to expert testimony in general, I believe that insofar as that premise relates to eminent domain cases, it is false. The hired expert has no special duty to the lawyer who hires him. In fact, the expert has but one duty—the duty to use his expertise honestly and fairly so that justice may be done. That duty transcends any possible duty to his employer.

It is unfortunate that litigants sometimes seek to subvert the spirit of the Federal Rules by resort to legal niceties. I am now convinced that an eminent domain litigant ought not be permitted to refuse to inform his adversary of the value (the very crux of the case) which he intends to attempt to prove when the case comes on for trial. I do not believe that eminent domain litigants should be allowed to continue to cloak their evidence of value in secrecy and "spring" it at the last minute when the trial is under way. To my mind, such procedure smacks too much of Mr. Tutt and the Common Counts.

I can readily see where unlimited discovery of expert opinion, without a workable scheme of cross-compensation, may in some cases create rank injustice. In view of that fact, I am prepared to exercise, and will, upon proper motion, exercise the power granted to me under Rule 30(b) to make any order "which justice requires to protect the party from annoyance, embarrassment, or oppression." (Fed.Rules Civ.Proc., Rule 30(b); and see, United States v. 50.34 Acres of Land, etc., supra; 4 Moore's Federal

Practice § 26.24 at pg. 1531; c. f., Henlopen Hotel Corp. v. Aetna Ins. Co., D.C., 33 F.R.D. 306).

 One matter remains for consideration, namely, the question of examination of the experts for the purpose of cross-examining them when they take the stand at the time of the trial. In light of the discussion above, it is evident that such examination should be allowed.

It is, therefore, ordered that plaintiff's motion for a protective order pursuant to Federal Rule of Civil Procedure 30(b) be, and the same is, hereby denied.