UNITED STATES of America

v.

38 CASES, MORE OR LESS, each containing 24 display boxes, each box containing 1 display card of 20 vials; 49 cases, more or less, each containing 24 display boxes, each box containing 12 display cards of 1 vial each; labeled in part "MR. ENZYME * * *"; approximately 157,000 booklets entitled "Mr. Enzyme"; approximately 150,000 individual display cards; approximately 4,500 display boxes.

Civ. A. No. 63–427.

United States District Court
W. D. Pennsylvania.

June 5, 1964.

Sebastian Pugliese, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Leonard Mendelson, Pittsburgh, Pa., for defendant.

**ROSENBERG, District Judge.**

Home Makers Savings Corporation, the claimant in this action, has filed two motions here. By its first motion, it seeks a protective order, under Federal Rule of Civil Procedure 30(b) [1] to prevent the United States, libellant, from taking the oral depositions of six witnesses, or alternatively to require that the depositions be taken only upon written interrogatories, or, if permitted to be taken orally, then only upon payment by the United States of the expenses of claimant's attorney in attending the depositions. By its second motion, the claimant seeks the admission of a member of the New York Bar pro hac vice. Both motions were opposed by the libellant.

In this civil, in rem seizure action under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., the United States seeks condemnation of a quantity of a certain drug on the ground that it is misbranded within the meaning of that Act, 21 U.S.C. § 352(a), which provides inter alia that "A drug or device shall be deemed to be misbranded—(a) If its labeling is false or misleading in any particular". The articles involved are a quantity of tablets labeled in part "Mr. Enzyme". These tablets are alleged by the libellant to be falsely represented as being effective in the prevention and treatment of a variety of gastric disorders and in the promotion of the digestion and assimilation of food. The libellant alleges that the labeling of "Mr. Enzyme" falsely represents and suggests

---

1. Rule 30(b) "Orders for the Protection of Parties and Deponents. After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matter shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

that the product is effective for such purposes because of whatever enzyme content it may possess. The claimant of the articles denies these allegations.

The libellant has filed and served a series of notices for taking depositions of the witnesses at the places and dates as follows:

| | |
|---|---|
| Eugene J. Chesrow, M.D., Chicago, Illinois | March 9; |
| Stanley Hier, Ph.D., Chicago, Illinois | March 11; |
| Edgar Lazo-Wasem, Ph.D., Cleveland, Ohio | March 12; |
| J. Alfred Rider, M.D., San Francisco, Calif. | March 16; |
| Donald Berkowitz, M.D., Philadelphia, Pa. | March 26; and |
| Edward Beckhorn, Ph.D., Brooklyn, N.Y. | March 28. |

---

The claimant objects to the taking of the depositions because (1) the taking would violate the attorney-client privilege and invade the attorney's work product; (2) the taking would unfairly force the claimant to disclose information obtained from experts employed to aid it in the preparation of this litigation; and (3) the taking of oral depositions at the places noted would unreasonably burden the claimant.

Supporting these contentions, the claimant argues as follows: (1) none of the six witnesses whom the Government proposes to question is now or has been an employee of the claimant; (2) none of the witnesses reside in the district where the libel is filed; (3) the Government seeks to take the depositions of the witnesses where they reside at varying distances of 125 to 2,000 miles from Pittsburgh; (4) three of these witnesses, Drs. Chesrow, Rider and Berkowitz have not yet completed the task for which they were retained; (5) there are adequate quantities of the disputed product available to the Government for testing by its own experts; (6) the subpoenaes issued to the witnesses go beyond the scope of the test they are now conducting and encroach upon the doctor-patient privilege against disclosure; (7) the Government has not offered to defray charges for the services of the experts and the fees and expenses of counsel of the claimant in connection with the depositions; (8) the Government has made no effort to elicit the information through written interrogatories which have proved satisfactory in other circumstances; (9) some restriction is required to be placed against the Government in its proceedings because totally unequal financial resources of the litigants will permit the Government to gain by default what it might well be unable to establish by a trial on the merits; and (10) the product involved is conceded not to be dangerous like thalidomide.

I do not deem it necessary to discuss each one of these in detail and shall examine them only as I have the facts and as they are reflected in the light of the law. Federal Rule of Civil Procedure 26 empowers any party to take testimony of any person including a party by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in an action, or for both purposes. It provides also that attendance of witnesses may be compelled by the use of subpoenaes as provided in Rule 45. In subparagraph (b) of the same Rule regarding the scope of examination, it is provided that unless otherwise ordered by the court the deponent may be examined regarding any matter not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or the defense of the examining party, or to the claim or defense of any other party, including other enumerated matters. However, privileged matters are

not included in the authorization and no depositions may be taken which would violate the attorney-client privilege, insofar as the contention of the claimant here is concerned. McCormick, Evidence, 1954, Sections 91–100.

Rule 30 provides for notice of the examination and its time and place. As stated before, the claimant is here under the provisions of Rule 30. The claimant's motion for a protective order contains the substance upon which the claimant stands. In the motion it sets forth repetitiously the reasons why it believes the depositions of each of these proposed deponents should not be permitted by the Government. With all of these, however, is repeated singularly that which was contained on page 1 of the brief in support of the motion for a protective order filed by the claimant. The statement is, "None of the six witnesses whom the Government proposes to question is now or has been an employee of the claimant."

We first examine the claimant's rights in the light of the assertions it makes here. It would seem from all the facts before me, as contained in the depositions and interrogatories on file in this case, that the claimant is the producer of the product, but not the manufacturer of it. It also appears that the claimant is now negotiating with Norwich Pharmacal Company for the purpose of establishing Norwich as the sole United States distributor of the product. In anticipation of the probability or possibility of becoming the United States distributor, Norwich is making an independent survey or study of "Mr. Enzyme".

The claimant corporation is at least, in part, engaged in the business of sales promotion. It, acting through Herbert J. Horovitz as vice-president and now as president, originated "Mr. Enzyme". Mr. Horovitz is by profession a pharmacist. After working with suppliers of the ingredients known by the trade names of mylase, prolase and cellase, manufactured by Walterstein Company and the successor company Baxter Laboratories, Inc., and of the ingredient, lipase, marketed by Wilson Laboratories and Pharmaceutical Company under that trade name, the claimant originated the product "Mr. Enzyme". It at the same time procured Strong Cobb Arner to manufacture it in the form of tablets, place these in vial containers and label them in the manner in which they became a finished product for sale as a stomach remedy. The labels were formulated by the claimant for marketing the product primarily both as an anti-acid and as an enzyme tablet or "antacid digestive mint".

At first the claimant advertised and marketed these directly through its own sales force. It then entered into an agreement with Norwich for sole distributorship in the United States as of January 1963. The distributorship became effective and lasted until the Food and Drug Administration took this action of condemning the product. As of June 16, 1963, the claimant entered into an agreement with P. W. Mansfield for distributing the product for one year and thereafter to be continued on a sixty day basis for certain states. Later an understanding was had between the claimant and Norwich by which it would take over the sole distributorship for the entire United States if and when it desired.

In the agreement as entered into between Norwich and the claimant, Norwich was granted the right to make such studies and tests of the product as it chose and to finance their costs without reimbursement from the claimant. It is in connection with such studies by the six witnesses, variously placed in Chicago, Cleveland, San Francisco, Philadelphia and Brooklyn, that the Government seeks to depose them for the purpose of discovery in pursuit of this action. It is to prevent or minimize this discovery that the claimant seeks a protective order.

 Would the taking of the proposed depositions violate the attorney-client privilege and invade an attorney's rights in his work product? The deposition of Herbert J. Horovitz, president of the

claimant corporation, informs us that he did not know very much about the proposed depositions of these witnesses, and that it was being done entirely upon the initiative and at the expense of Norwich, without reimbursement by the claimant. It is obviously being done by Norwich, not so much for the claimant's benefit, as for the benefit of Norwich, in order to aid it in determining whether or not to accept the distributorship of the product. And presumably, it is studying the very matters with which the Federal Food, Drug and Cosmetic Act is concerned and for which it has provided. This is a Norwich project. Its result is obviously not the work product of the attorney for the claimant.

The work product rule is being projected by the claimant into what Norwich is doing. There does not appear to be any evidence here that it is an attorney's work product—even a Norwich attorney's work product. From the record, it appears that this is a commercial exploration by Norwich guided by the men who are familiar with drugs and sales for the purpose of ascertaining whether "Mr. Enzyme" is a marketable drug.

The work product of a lawyer as a basis for objection to discovery or production sought under the federal rules refers to the embodiment of a policy that a lawyer doing a lawyer's work in preparation of a case for trial, should not be hampered by the knowledge that he might be called upon at any time to hand over the results of his work to his opponent. E. I. Dupont de Nemours & Co. v. Phillips Petroleum Company, D.C., 24 F.R.D. 416, 419 (1959). Such work product is such as may be included in common law attorney-client privilege. Smith v. Insurance Company of North America, D.C., 30 F.R.D. 534, 538 (1962). The work product of an attorney consists of personal recollections, mental impressions, opinions, private memoranda and legal theories prepared by the attorney. But written materials or documents, if relevant, when obtained or prepared by the attorney, are subject to discovery if the parties seeking the same can make a proper showing of necessity, and to such an extent the attorney work product immunity is qualified. Burke v. United States, D.C., 32 F.R.D. 213, 214 (1962). And it is not such as will be included in the attorney-client privilege where the information which an attorney secures from witnesses, while acting for his client, is in anticipation of litigation. Gulf Construction Company v. St. Joe Paper Company, D.C., 24 F.R.D. 411, 413 (1959).

The work product does not afford a privilege but merely imposes a requirement that very good cause for discovery may be shown if disclosure was made in the lawyer's presentation of a case. City of Philadelphia v. Westinghouse Electric Corp. (E.D.Pa., 1962), 210 F.Supp. 483, 485. Even if a document qualifies as a work product, discovery should not be denied if adequate reasons appear. Hanover Shoe, Inc. v. United Shoe Machinery Corporation (M.D.Pa., 1962), 207 F.Supp. 407, 410. The attorney work product, if privilege it is, is the privilege of the attorney and not that of the client, its rationale is based upon the right of a lawyer to enjoy privacy in the course of preparation of his suit. Radiant Burners, Inc. v. American Gas Association (N.D.Ill., 1962), 207 F.Supp. 771.

It may be that when experts in an extremely technical field have been retained to advice counsel in a case as to proper technical interpretation of certain facts and of the state of technical information that such advice may partake of counsel's work product and be entitled to the protection as is accorded to a lawyer's other work products. Carpenter-Trant Drilling Company v. Magnolia Petroleum Corporation, D.C., 23 F.R.D. 257, 261 (1959). However, when experts are so availed, it must so appear. But that experts may provide evidence for a party does not, ipso facto, make them technical advisors to a lawyer and their

advice and reports a part of his work product. Barron & Holtzhoff, (Wright Edition), Section 652.5.

The attorney-client relationship cannot exist between anyone other than the attorney and client. The privilege against disclosure is not for the protection of the attorney but only for the protection of the client. It is only the client that may invoke the privilege. Wigmore on Evidence, § 2321 et seq.

In Comercio E. Industria Continental, S. A. v. Dresser Industries, Inc., et al., D.C., 19 F.R.D. 513 (1956), District Judge Irving R. Kaufman (now Judge of the Court of Appeals for the Second Circuit), where discovery was sought under Federal Rule of Civil Procedure 34 and resisted on the ground that the documents sought for discovery were privileged because of the attorney-client relationship, it was held that if the legal advisor was not acting in his capacity as such but rather in some business capacity, communications pertaining to those business matters were not entitled to be privileged. The attorney-client privilege, it was said, is based upon the theory that although certain confidential communications are relevant, their relevation would impair the social good derived from the proper performance of the functions of lawyers for their clients.

Nothing of that kind appears in this case as it relates to the six witnesses sought to be deposed by the Government. These are doctors who have been retained by Norwich for the purpose of procuring information concerning the drug "Mr. Enzyme" for Norwich's benefit. That it may subsequently benefit the claimant is immaterial. There is no direct relationship between the six doctors and the claimant. There is no contractual relationship between them. There is no personal relationship between them, and there is no privileged relationship between them

There is no showing here of any attorney-client relationship nor an invasion of the attorney-client privileges as may be included in the provision of Federal Rule of Civil Procedure 26(b) as contained in these words:

"Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * * *".

Would the taking of the depositions by the libellant unfairly or unduly prejudice the claimant? From what has been said it is obvious that what will benefit or prejudice the claimant will be contained in the substance of the findings of the six witnesses and their evidence as it may eventually credit or discredit the claimant's product.

Since the probability exists that such witnesses may eventually be offered to testify in this action, the libellant is properly an interested party. The taking by the libellant of the depositions of these witnesses should have no effect upon the substance of the depositions or such evidence which they may or might eventually be called upon to give. The six witnesses are, as I said, professional men, each experts in their particular profession or calling. From what appears in the record, it seems that each of these men will supervise or be in charge of a survey and the results of the product "Mr. Enzyme" upon individual patients. Thus, they will be having evidence of value to Norwich and incidently and subsequently to the claimant, but their evidence is of much greater value to the libellant because of its responsibility under the Act in furthering the public interest and protecting the public against the Act's violations. It is true, as Judge Kaufman said in Comercio E. Industria Continental, supra, 19 F.R.D. at page 514, that "[d]iscovery is founded upon the

policy that trial should not be treated as a sporting event, but as a search for the truth." It is also true that we are enjoined to apply our Federal Rules of Civil Procedure liberally for the purpose of the ascertainment of truth in the actions brought into the Federal courts. The primary concern of the court is to elicit truth essential to correct adjudication. Sachs v. Aluminum Company of America, C.A. 6, 1948, 167 F.2d 570, 571.

The fact that, in this action, the Government is attempting to enforce a public health statute relating to the public interest can be an additional reason why disclosure must be made. Walsh v. Reynolds Metals Company, D.C., 15 F.R. D. 376, 378, 379 (1954). Congress has imposed functions and duties upon the Secretary of Health, Education and Welfare in connection with this Act. The Act also imposes with these functions and duties definite rights in the Secretary. Such rights must be weighed as fairly for the individual as they must be in behalf of the public as a whole. There are untold numbers of people who suffer from stomach ailments and disorders and who are easily receptive to any persuasions which give them hope for relief. They will be quickly tempted to try or use this product if it is on the market and particularly if it is advertised or brought to their attention in any pressured form as is done in modern commercial selling. They will be hoping, even believing, that here is a cure or relief for their complaints. And since Congress has provided in this Act, an instrumentality by which the product, which they desire or are about to buy, may be tested or evaluated as to efficacy and safety, the purchasing public is entitled to such benefits as Congress may have provided.

It would seem that a drug producer under circumstances of this kind would invite the Government's gauging, testing and approval of its product, rather than obstruct these. If the product is efficacious and safe, it is certainly as beneficial to the producer as it is to the consuming public. But if it is not, then the Government has an obligation to ascertain that fact and bring it to the public's attention.

The burden is now upon the libellant to show that the claimant's product is not in compliance with the provisions of the Act. If it can do so, it ought not to be obstructed by irrelevant technicalities and baseless reasons. If, as the claimant contends, the witnesses to be deposed have not yet completed their tasks or surveys, they will so state when they are deposed. That the Government does not choose to make its own tests by its own experts, as the claimant asserts, or whether it makes its own tests or not, is no reason for preventing the Government from ascertaining the facts as Norwich's witnesses may have them. That such witnesses live at varying distances from Pittsburgh has no bearing on the right of the libellant to take depositions of such witnesses. That the libellant chooses to take depositions of the six witnesses, rather than written interrogatories does not affect the rights of the claimant, since the libellant may take both depositions and present written interrogatories cumulatively. Canuso v. City of Niagara Falls (W.D.N.Y., 1945), 4 F.R.D. 362. That the witnesses do not desire to testify without the claimant's consent, as the claimant maintains, is of no relevancy here. Whether the claimant consents or not is of no consequence. That "Mr. Enzyme" is conceded not to be a dangerous product like thalidomide, does not grant immunity to the claimant for this product against the provisions of the Act and the right of the libellant to move for discovery information. That the Government has not offered to defray the charges of the witnesses should be of no concern to the claimant, since it, itself, has no such responsibility. And since these witnesses never were and are not now the claimant's employees, it need have no concern for their expenses as deposition witnesses. And this brings

us to the right of the claimant to complain, as if they were its employees or its retained experts.

These six witnesses are not the claimant's witnesses. They are not the claimant's employees. They have materialized as witnesses here, incidently, because of an agreement between the claimant and Norwich. The claimant and the six witnesses are in effect strangers. The claimant is not here protecting the rights of the six witnesses for Norwich, and nothing appears in the record that any of these need their rights protected against the libellant. Since Norwich, their employer, is not an opposing party (although, perhaps an interested one), there is further reason why no protective order should be granted the claimant.

. But even assuming that these witnesses were indeed retained by the claimant for the very purposes for which Norwich retained them, could the claimant now prevent the libellant from deposing them by way of discovery? It is likely in this case that expert testimony will be available on both sides and the issues be defined in large measure through such testimony. If such testimony is to be understood by the trier of fact, it is essential that there be an orderly presentation of relevant facts at trial. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. * * * The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. * * *" Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451.

Is the claimant entitled to the protective withholding of the taking of the depositions of those six witnesses because they are expert witnesses (assuming again that they were the claimant's expert witnesses)? These witnesses are professional men. Empire Oil & Refining Co. v. Hoyt, C.A. 6, 1940, 112 F.2d 356.

But professional men can be experts. Here the six proposed witnesses were engaged to procure proof of "Mr. Enzyme's" merits and demerits. This proof is presumably based upon surveys and their results, perhaps also on analyses, reactions and the like. These are matters of substance. The opinion of these men may be questions of expertise, but all taken as a whole become in substance matters of fact. There is mixed authority on whether an expert who may become a witness is liable to discovery. Lewis v. United Air Lines (W.D.Pa., 1940) 32 F. Supp. 21; Sachs v. Aluminum Company of America, supra. Such authority as deprives opposing parties of the right to depose expert witnesses has no application here. Since these witnesses will have evidence as to the substance of the issues here involved, they become a potential source for evoking facts. They are not then experts in any sense as under our rules should become immune from discovery by the opposing party. To deprive the Government of its right to take the oral depositions of the six witnesses would be unwarranted.

Will the taking of oral depositions at the various cities, unreasonably burden the claimant? The claimant contends that it will. The making of the agreement between the claimant and Norwich was presumably within the claimant's control. That it sanctioned Norwich to proceed with such studies, investigations and tests as it did, would have or should have placed the claimant in contemplation of expected processes as would come within the requirements of the Act. The claimant did not confine these studies to the Pittsburgh area, nor require Norwich to conduct them in close proximity to Pittsburgh. So that if the studies were subsequently made in pursuance of such an agreement over portions of the United States remote from Pittsburgh, it was done as a result of the claimant's own participating action. So, too, where the claimant proposes to place its product on the entire national market as it contem-

plated, it should be prepared to aid in establishing the virtues of the product or to defend its virtues throughout the market. This is aside from the fact that Norwich was the employer of the six witnesses and that the claimant has or may have a consequential interest in the testimony of these witnesses. However, since the claimant does have an interest in the testimony of these witnesses, and should it desire to be represented at the taking of such depositions, it should have the right to do so, but it cannot be at the expense of the Government. In order to enable the claimant to be represented at the various deposition takings, they should be so scheduled as to avoid concurrency.

During argument, a motion was made by claimant's attorney for admission, for the purpose of this case only, of Robert H. Becker, Esq., of Norwich, New York, a member of the Bar of the State of New York, "to the end that the said Robert H. Becker, Esq., may participate in this action as an attorney for Home Makers Savings Corporation". The libellant resists such admission and points to facts as related by the president of the claimant company in depositions and in interrogatories on file in this case. It appears that Mr. Becker is an employee of Norwich and that claimant's president has had contactual negotiations in regards to its product with Mr. Becker and with Mr. Tracey of the Norwich corporation as that company's representatives. The libellant asserts that if the motion for admission is granted that Mr. Becker would then be both an employee of the Norwich Corporation, a presently or prospectively interested party and an attorney for the claimant. As counsel for the claimant, he could successfully obstruct discovery from this time on, although presently he cannot. If such be the case, the admixture of these two situations should be avoided.

Accordingly, both motions will be denied.