UNITED STATES of America, Appellant,

v.

Horace MEYER et al., Appellees.

No. 21127.

United States Court of Appeals Ninth Circuit.

July 17, 1968.

Roger P. Marquis (argued), Dept. of Justice, Washington, D. C.; Edwin L. Weisl, Jr., Asst. Atty. Gen., Cecil F. Poole, U. S. Atty., A. Lawrence Burbank, Asst. U. S. Atty., San Francisco, Cal., for appellant.

C. Ray Robinson (argued), Merced, Cal., Robert A. Seligson (argued), of Bledsoe, Smith, Cathcart, Johnson & Rogers, San Francisco, Cal., for appellee.

Before HAMLIN, JERTBERG and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

The United States instituted this proceeding to condemn privately-held land within the boundaries of Yosemite National Park, California. Appellee-landowner issued notices under Rule 26, Federal Rules of Civil Procedure, for the taking of the depositions of three real estate appraisers employed by the government to appraise the condemned property, and served each appraiser with a subpoena under Rule 45(b) calling for the production of documents relating to the action.[1]

The government moved under Rule 30 (b) for a protective order to provide as follows:

"1. That the deponent shall not be interrogated as to his opinion of the value of the subject property.

2. That the deponent shall not be interrogated as to his opinion of the highest and best use of the subject property.

3. That the deponent shall not be interrogated as to any matter of opinion or conclusions reached upon a consideration of facts ascertained by the deponent.

4. That the deponent shall not be interrogated upon or about any written report that deponent may have submitted to the National Park Service or other agency of the United States Government.

5. That the deponent shall not be interrogated as to any matter presumably within the knowledge of the defendant herein.

6. That said deponent shall not be interrogated for the purpose of cross-examination in the event said deponent testifies as a witness at the trial of said cause."

Judge Halbert denied the motion, supporting his order with a full and careful opinion. United States v. 364.82 Acres of Land, etc., 38 F.R.D. 411 (N.D. Cal.1965). This court denied the government's application for interlocutory appeal under 28 U.S.C. § 1292(b) (1964) on the authority of United States v. Woodbury, 263 F.2d 784 (9th Cir. 1959).

The witnesses appeared at the time and place fixed for the taking of their depositions, but declined to answer questions or produce documents whenever in the opinion of government counsel the discovery sought would have been barred by the protective order which the government had requested and the court had denied. The area foreclosed to inquiry, as reflected in the transcripts of the depositions, is outlined in the margin.[2]

---

1. Each subpoena called for the production of "all records, maps, photographs, data on comparable sales, reports on water supply or the lack thereof, a complete list of the settlements and payments made by the United States for Foresta lots or property, together with a list of Foresta lots, if any, which have not been acquired, subdivision reports, utility company reports, soil or agricultural reports, books, papers, documents and tangible things which now are or may be in your possession, and which are related to the above-entitled cause."

2. Two appraisers had completed their appraisal reports, but declined to produce them. The appraisers declined to produce their "field notes," and notes of interviews, on the ground that these reflected "conclusions" or "opinions" formed in the course of the appraisal process.

They declined to testify as to the nature and character of the condemned property, its highest and best use, or its value.

They declined to state what they had learned from government records regard-

Appellees moved for imposition of sanctions, and the court entered judgment dismissing the action and striking from the records the complaint in condemnation, the declaration of taking, and the order for delivery of possession. This appeal followed.

■ A complaint in condemnation consists of a citation of authority for the taking, a statement of the intended use, and a description of the property taken. Rule 71A(c) (2), Federal Rules of Civil Procedure. The owner's answer is usually limited to a notice of appearance. Except in those rare instances in which the taking is challenged, no other response is allowed. Rule 71A(e). Thus the pleadings in a condemnation case are wholly uninformative on the only issue to be tried: the amount of compensation to be paid for the property.[3]

Because land appraisal is complex and technical, usually evidence on the issue of value consists principally of the opinions of opposing experts. These opinions are notoriously disparate. The weight to which an appraiser's opinion testi-

mony is entitled turns upon the validity of the appraiser's premises, procedures, and theories; the soundness of his factual determinations; the comparisons he has made; the methods he has followed, and the formulae he has applied. Basically, the trial of a condemnation suit consists of the admission into evidence of the opinions of the opposing appraisers and the factual and theoretical bases upon which they rest, and the testing of those opinions by cross-examination and rebuttal.

The appraisers' opinions and their factual and theoretical foundation are peculiarly within the knowledge of each appraiser and, to a degree, that of the party who employed him. The opposing party can obtain this information in advance of trial only by discovery. Since this material will constitute the substance of the trial, pretrial disclosure is necessary if the parties are to fairly evaluate their respective claims for settlement purposes, determine the real areas of dispute, narrow the actual issues, avoid surprise, and prepare adequately for cross-examination and rebuttal.

---

ing the water rights on the condemned property, or any other facts "collected or collated" by them and used in evaluating the condemned property, on the ground that these facts were as readily ascertainable by the landowner.

They refused to state how many possibly comparable sales they had considered in appraising the condemned property, or to list those sales they considered as comparable and those they rejected as not comparable. They declined to state why sales were considered or rejected. They declined to testify as to the dates of the sales, the prices paid, or any facts bearing upon the question of comparability, apparently on the ground that these were matters of conclusion or opinion or were equally available to the landowner.

They declined to state whether they had considered certain specifically identified properties acquired earlier by the government to be comparable, their valuation of such property, and whether severance damages were involved.

They declined to testify or produce documents relating to prior appraisals by them of the condemned property or

of possibly comparable property, including property adjacent to that condemned, on the ground that this information was irrelevant, and the inquiry constituted an unwarranted "fishing expedition."

They declined to state whether they were familiar with specified sales of property, how long they had spent in viewing the condemned property, who had accompanied them, and whom they had consulted regarding the valuation of the condemned property, on the ground that this was preparation for cross-examination.

Essentially, the witnesses testified only to the fact that they had been employed by the government to appraise this and other property, giving the dates of employment and the fees paid. The only documents produced were the contract of employment of one of the appraisers, copies of photographs of the condemned property, and some printed maps.

3. "An extreme example of going to trial without issues or issues only vaguely defined is the usual eminent domain proceeding." Long, Discovery and Experts, 38 F.R.D. 111, 142 n. 150 (1965).

The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has recently written regarding condemnation cases and others which "present intricate and difficult issues as to which expert testimony is likely to be determinative":

"In cases of this character, a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand. McGlothlin, Some Practical Problems in Proof of Economic, Scientific, and Technical Facts, 23 F.R.D. 467, 478 (1958). A California study of discovery and pretrial in condemnation cases notes that the only substitute for discovery of experts' valuation materials is 'lengthy—and often fruitless—cross-examination during trial,' and recommends pretrial exchange of such material. Calif. Law Rev. Comm'n, Discovery in Eminent Domain Proceedings 707-710 (Jan. 1963). Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated." 43 F.R.D. 211, 234 (1967).

In sum, in condemnation cases full pretrial disclosure of appraisers' opinions and the details upon which they are based is required if the rules are to accomplish their purpose to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).[4]

4. See United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 597 (D.Md. 1963) (opinion as to particular aspects of value; ultimate conclusion as to value not requested); United States v. 50.34 Acres of Land, etc., 13 F.R.D. 19 (E.D. N.Y.1952); cf. United States v. McKay, 372 F.2d 174 (5th Cir. 1967); Seven-up Bottling Co. v. United States, 39 F.R.D. 1 (D.Colo.1966); see also United States v. 62.50 Acres of Land, etc., 23 F.R.D. 287 (N.D.Ohio 1959); Goldstein, Discovery Process in Highway Land Acquisition, 14 Am.U.L.Rev. 38, 40 (1965); Note, Pretrial Discovery in Condemnation Proceedings, 42 St. John's L.Rev. 52 (1967); Comment, Discovery of Expert Opinion in Land Condemnation Cases, 41 Ind.L.J. 506, 511, 520–21 (1966); Note, 111 U.Pa.L.Rev. 509 (1963).

This view has been adopted by the Supreme Courts of Arizona (State ex rel. Willey v. Whitman, 91 Ariz. 120, 370 P.2d 273 (1962)); Florida (Shell v. State Road (Dep't, 135 So. 2d 857, 860–861 (1961)); California (Oceanside Union School Dist. of San Diego County v. Superior Court, 58 Cal. 2d 180, 23 Cal.Rptr. 375, 373 P.2d 439, 443–445 (1962); San Diego Professional Ass'n v. Superior Court, 58 Cal.2d 194, 23 Cal.Rptr. 384, 373 P.2d 448, 453, 97 A.L.R.2d 761 (1962)); Iowa (Crist v. Iowa State Highway Comm'n, 255 Iowa 615, 123 N.W.2d 424, 431 (1963)); and Wisconsin (State ex rel. Reynolds v. Circuit Court, 15 Wis.2d 311, 112 N.W. 2d 686, 689–692, 113 N.W.2d 537 (1961)). In Maryland also, "full discovery as to expert witnesses is permitted in condemnation cases." United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 597 (D.Md.1963).

Pretrial exchange of appraisal reports is provided by statute in England. 10 Halsbury, Laws of England 175–76 (3d ed. 1955).

Cases allowing discovery of the opinions of experts other than appraisers include Sachs v. Aluminum Co. of America, 167 F.2d 570 (6th Cir. 1948); Franks v. National Dairy Prods. Corp., 41 F.R.D. 234 (W.D.Tex.1966); Dresser Industries, Inc. v. Doyle, 40 F.R.D. 478 (N.D.Ill.1966); United States v. 38 Cases, More or Less, etc., 35 F.R.D. 357 (W.D.Pa.1964); Henlopen Hotel Corp. v. Aetna Ins. Co., 33 F.R.D. 306 (D.Del.1963); United States v. Nysco, 26 F.R.D. 159 (E.D.N.Y.1960). See generally Long, Discovery and Experts, 38 F.R.D. 111 (1965); Friedenthal, Discovery and Use of an Adverse Party's

Nonetheless, the protective order sought by the government, particularly as it was interpreted by the government in its counseling of the witnesses on deposition, would have totally foreclosed inquiry into these areas. The arguments offered in support of the government's position are as follows.

The government disputes the hypothesis that discovery of its appraisers' opinion and the basis for them will serve the purposes of the rules. It argues that discovery cannot narrow and clarify the issues because all concerned know that only one issue is presented—the amount of just compensation. This contention enthrones form over substance. "Just compensation" for property taken may be the only ultimate "issue," but it is a conclusion drawn from numerous factual and legal premises, many if not most of which may be disputed. Which of these premises are disputed and which are not can be determined short of trial only by voluntary disclosure or discovery.

The government argues that no significant reduction in the area of dispute or shortening of the trial will result from disclosure of appraisers' opinions of value and the factors upon which those opinions are based because "the competent attorney will not stipulate to a factor so as to eliminate its consideration in detail" by the trier of fact. This contention denies the premises upon which the rules rest; it comes thirty years too late. It is also refuted by experience.[5] Moreover, it ignores other purposes served by discovery—to encourage settlements, to avoid surprise, to permit effective cross-examination and rebuttal, and, basic to all others, "to elicit truth essential to correct adjudication." Sachs v. Aluminum Co. of America, 167 F.2d 570, 571 (6th Cir. 1948). See note 5.

The government took the position below that a party is not subject to discovery of information available to the opposing party from other sources, and therefore the characteristics of the condemned land and sales of comparable lands were not discoverable because the landowner could obtain the same facts from the same sources as had the government appraisers. Similarly, the opinions of the government appraisers regarding the value of the condemned land were not discoverable since the landowner could obtain opinions as to value from other appraisers.

■ This view has not been pressed before us. The appraisers were not parties but potential witnesses, and their

Expert Information, 14 Stan.L.Rev. 455, 483, 487–88 (1962); Schuck, Techniques for Proof of Complicated Scientific and Economic Facts, 40 F.R.D. 33, 39 (1965); Kalinowski, Use of Discovery Against the Expert Witness, 40 F.R.D. 43, 43–44, 46 (1965); Developments, 74 Harv.L.Rev. 940, 1031–32 (1961).

5. A recent survey disclosed not only that various procedures for pretrial disclosure of expert testimony "have been extensively used in this Circuit but also that the employment of them has been beneficial in a number of ways. The advance submission of direct testimony enables the judge to be forewarned on points that may require ruling. It enables him to eliminate areas of testimony considered improper. It has compelled the adversary experts and counsel to put the testimony on paper and thus has minimized disjointed and inadequate presentation resulting from poor preparation. *Probably the biggest bonus has been*

*the shortening of proceedings either by bringing the parties together on subsidiary questions or by making it possible to sharpen cross-examination on salient points. It has also been found to be effective in facilitating settlements.*" (Emphasis added.) Schuck, 40 F.R.D. 33, 40 (1965).

Similarly, "under Maryland law and in Maryland state courts, full discovery as to expert witnesses is permitted in condemnation cases, and the results have been *that the issues are sharpened and pointed*, trial time is reduced, and settlements are encouraged." (Emphasis added.) United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 597 (D.Md. 1963).

We have seen nothing to indicate that the results of disclosure are less than satisfactory in the several other jurisdictions in which pretrial discovery of appraisers' opinions is provided by statute or court decision. See note 4.

knowledge of relevant information was not immunized from disclosure merely because the government paid them to acquire it.[6] If the information "collected and collated" by them is treated as having been gathered by the government, its disclosure would still be appropriate for "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

Moreover, the vital information sought was not available from other sources. The landowner sought to learn the opinions of the government appraisers and their basis. Obviously this information could be obtained only from those appraisers themselves.[7] An absolute bar to discovery of this information couched in terms of equal availability would therefore have been inappropriate. At most, a protective order designed to minimize abuse or unfairness might be proper in some circumstances.

■ The government appears also to have retreated from its broad claim below that it is improper to examine a deponent "for the purpose of cross-examination in the event said deponent testifies as a witness at the trial." As we have noted, cross-examination of appraisers regarding the basis of their opinions is one of the principal means for testing the weight which should be given to their opinion testimony. Pretrial discovery is particularly important to preparation for effective cross-examination of such witnesses, and is commonly employed for that purpose.[8] There is nothing in Rule 26 to indicate that this purpose is not an entirely proper one; on the contrary, Rule 26(d) (1) expressly authorizes use of depositions "for the purpose of contradicting or impeaching the testimony of deponent as a witness." [9]

The government continues to press its position, reflected in the first three paragraphs of the motion for protective order, that discovery does not extend to appraisers' "opinions," as distinguished from "facts" within their knowledge.

It would be a curious anomaly if expert opinion, though admissible in evi-

6. Sachs v. Aluminum Co. of America, 167 F.2d 570 (6th Cir. 1948); Seven-up Bottling Co. v. United States, 39 F.R.D. 1 (D.Colo.1966); 4 Moore, Federal Practice, § 26.24 at 1528–30 (1967). Professor Louisell has said, "the notion that expert knowledge relevant to adjudication is but a species of private property, within the owner's exclusive domain * * * seems to strain the adversary system to the breaking point, and to become morally intolerable." Louisell, Modern California Discovery, § 11.04 at 332 (1963).

7. "From the very nature of the questions eliciting opinions sought to be answered, there is no basis to believe that the information sought to be elicited, since it is subjective in nature, might be obtained by the defendants except by the questions being answered by the only person, the expert, who has such information." United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 596 (D.Md.1963).

8. Seven-up Bottling Co. v. United States, 39 F.R.D. 1 (D.Colo.1966); United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 596 (D.Md.1963); United

States v. 62.50 Acres of Land, etc., 23 F.R.D. 287 (N.D.Ohio 1959); United States v. 50.34 Acres of Land, etc., 13 F.R.D. 19, 21 (E.D.N.Y.1952); Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, November 1967, 43 F.R.D. 211, 234.

9. The government does offer a somewhat related argument that it would be unfair to the government and annoying and embarrassing to the appraiser to permit the "discovery and use by hostile counsel" of the appraiser's "initial, unapproved" appraisals, which may contain errors and inadequacies which are corrected during the government's review of the appraiser's efforts before his final report is prepared and accepted. Such inquiries seem entirely appropriate in anticipation of cross-examination at trial, subject of course to the trial court's wide discretion to impose practical limitations upon the scope and length of the inquiry.

dence at trial, were nevertheless shielded from pretrial discovery.[10]

No fact-opinion distinction is found in the discovery rules; Rule 26(b) extends discovery broadly to "any matter, not privileged, which is relevant to the subject matter involved in the pending action." In 1946 the Supreme Court rejected a proposal to amend the rules to restrict discovery of writings reflecting the conclusions of experts.[11] The nearly contemporaneous use of the word "fact" in certain passages in the opinion in Hickman v. Taylor, 329 U.S. at 507–508, 67 S.Ct. 385, cannot be taken as an implicit adoption of the rejected limitation.

■■ The determinative question is not whether "fact" or "opinion" is sought, but rather whether it is practicable to require discovery and whether to do so would serve the purposes of the rules.[12] So far as discovery of the opinions of appraisers in land condemnation cases is concerned, the answer is clearly yes—subject, again, to a discriminating use of the court's Rule 30(b) power to prevent abuse.[13]

The government recognizes that *Hickman* rejected the attorney-client privilege as a possible basis for foreclosing discovery of the opinions of its appraisers and the basis upon which they rest. 329 U.S. at 508, 67 S.Ct. 385.[14] The government contends, however, that *Hickman's* qualified exemption from discovery of an attorney's "work-product" should be extended to such information.

A recent report of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States "rejects as ill-considered the decisions which have sought to bring expert information within the work-product doctrine." 43 F.R.D. 211, 233 (1967).[15] The reasons seem clear. *Hickman* restricted discovery from opposing party's counsel of written and oral statements of witnesses obtained by counsel in preparation for trial. In Alltmont v. United States, 177 F.2d 971, 976 (3d Cir. 1949), the *Hickman* rule was extended to limit discovery from the government of statements obtained from witnesses by an F.B.I. agent for the use of the government's attorneys. The *Alltmont* extension of *Hickman* has been criticized on the ground that discovery from the agent of statements he has obtained from witnesses does not involve an intrusion into the attorney's files or thought

10. See Long, 38 F.R.D. 111, 146 (1964). Expert opinion presented as evidence to the trier of fact is "fact" for the practical purpose of litigation. United States v. 38 Cases More or Less, etc., 35 F.R.D. 357, 364 (1964).

11. See 4 Moore, Federal Practice, § 26.23 [6] at 1358–61 (1967). The distinction between "fact" and "opinion" is rejected in the recently proposed amendments to Rule 26. Notes, 68 Colum.L.Rev. 271, 281 (1968).

12. See 4 Moore, Federal Practice, § 26.16 [4] at 1195 (1967); Long, 38 F.R.D. 111, 150 (1964).

13. The government seems to argue that discovery of opinions of government appraisers as to value is barred because Rule 71A does not require the government to plead its claim as to the amount of just compensation. We are not concerned with pleading, but with the discovery of evidence and matter that may lead to the disclosure of evidence. The government is not bound by the appraiser's deposition testimony as to value.

14. United States v. McKay, 372 F.2d 174, 176 (5th Cir. 1967); United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 596–597 (D.Md.1963); Oceanside Union School Dist. of San Diego County v. Superior Court, 58 Cal.2d 180, 23 Cal. Rptr. 375, 373 P.2d 439, 443–445 (1962); San Diego Professional Ass'n v. Superior Court, 58 Cal.2d 194, 23 Cal.Rptr. 389, 373 P.2d 448, 450–452, 453, 97 A.L.R.2d 761 (1962); State ex rel. Reynolds v. Circuit Court, 15 Wis.2d 311, 112 N.W.2d 686, 690, 113 N.W.2d 537 (1961); Crist v. Iowa State Highway Comm'n, 255 Iowa 615, 123 N.W.2d 424, 430 (1963). Friedenthal, 14 Stan. L.Rev. 455, 455–69 (1962).

15. See also United States v. McKay, 372 F.2d 174 (5th Cir. 1967); Sachs v. Aluminum Co. of America, 167 F.2d 570 (6th Cir. 1948).

processes. 4 Moore, Federal Practice, § 26.23 [.8–2] at 1410–11 (1967).

In any event, neither *Hickman* nor *Alltmont* is relevant to the discovery sought from the government's expert appraisers here.

The attorney in *Hickman* and the investigative agent in *Alltmont* were not potential witnesses to the facts reflected in the statements they had gathered, and denying discovery of the statements would not bar the opposing party from access to those facts. The facts, as distinguished from the statements themselves, might still be secured by interrogatories directed to the opposing party, or by deposing the witnesses from whom the statements were taken. This is made clear in both opinions (329 U.S. at 508–509, 511, 513, 67 S.Ct. 385, 91 L.Ed. 451; 177 F.2d at 976). In this case, however, the government appraisers are themselves the potential witnesses. Their opinions and the facts and theories which support those opinions are admissible in evidence at the trial, and they can be obtained only from the appraisers themselves. They should be discoverable if the purposes of the rules are to be effectuated. See note 15.

The government asserts that the final reports of government-employed appraisers are the product of consultation between the appraisers and government counsel and are therefore at least in part the work product of the government's attorneys.

The most obvious answer is that in the present case the government did not object merely to discovery of portions of the appraisers' reports which reflected the attorneys' mental processes, or even to the discovery of the reports as a whole. On the contrary, it sought to bar any inquiry into the preliminary or final opinions of the appraisers, the basis for those opinions, any matters relevant to cross-examination, and any facts known to the appraisers from sources available to the landowner.

■ Ordinarily, appraisers are not employed in condemnation matters to act as advisors to counsel; and the government does not contend that its appraisers were.[16] Appraisers are usually employed to furnish expert opinions as to the value of the property taken. The appraisers' opinions and the data and analyses upon which they rest are interdependent elements which together constitute the product of the appraisers' expertise. They do not become the work product of the attorneys merely because the attorneys confer and counsel with the appraisers; they are not immunized from discovery merely because the appraisers may have set them out in reports to counsel.

■ Discovery of this information from the appraisers is not likely to produce the evils against which *Hickman* is said to be directed. There is neither invasion of the privacy of the attorneys' files or thoughts nor direct interference with the attorneys' preparations for trial, and the attorneys are not cast in the role of witnesses. No grave danger of inaccuracy or untrustworthiness is introduced, for in the main, the appraisers testify to matters within their own knowledge, not to statements taken from others. In any event, if the appraisers have relied upon inaccurate data, that fact itself is highly relevant in evaluating the appraisers' opinion testimony. Nor will the threat of discovery lead attorneys to do the appraisers' work to the neglect of proper preparation for trial since property appraisal is a distinct discipline and not simply part of counsel's duties which have been delegated to others. Finally, it is unlikely that discovery will lead either party to refrain from using appraisers in condemnation cases since their testimony is usually essential and cannot be foregone simply to avoid discovery.[17] If a substantial possibility

---

16. A counseling relationship would undoubtedly be entitled to protection from unlimited discovery. See Long, 38 F.R.D. 111, 142 (1965).

17. State ex rel. Reynolds v. Circuit Court, 15 Wis.2d 311, 112 N.W.2d 686, 691, 113 N.W.2d 537 (1961).

of these or other adverse consequences, such as undue interference with completion of the appraisers' work, appears to exist in a given case the appropriate reaction is a protective order drawn to prevent the abuse, not a broad foreclosure of discovery.

■ The government accuses the district court of having ignored the "good cause" requirement of Rule 34, which the government contends is also applicable under Rule 45(b) when production is sought of documents prepared or obtained by attorneys or other representatives of the parties in preparation for trial.[18] But again, the government's opposition to discovery was not limited to the production of documentary materials. If appellee had been allowed access by oral deposition to relevant information known to the appraisers, an argument might be made that production of the appraisers' reports should not be required without some showing of need.[19] But to deny both production of the appraisers' reports and oral testimony as to the information they contained would, as we have seen, foreclose appellees' access to material essential to the proper litigation of the issue of just compensation.

■ Most of the decisions denying pretrial access to the opinions of experts employed by the opposing party rest on the ground that to allow such discovery would be unfair to the opposing party, because it would permit the discoverer to exploit the diligence of opposing counsel and shirk counsel's own duty of independent preparation. This is not an acceptable ground for barring discovery of facts known and opinions held by appraisers in condemnation cases. The risks of abuse are not great. The burdens of discovery are equal, and it is hardly likely, as a practical matter, that

either party can rely in any substantial measure upon discovery of the other side's appraisers as a substitute for independent preparation. On the other hand, as we have seen, the testimony of appraisers is the crux of the trial, and full disclosure of their opinions and the foundation upon which they rest are essential to adequate litigation. The court has broad power to control the timing and order of discovery, limit its scope, require the payment of fees and expenses, and take other steps which justice requires to protect the party or witness from annoyance, embarrassment, or oppression.[20]

It is undoubtedly true that no protective order can wholly eliminate the risk of abuse without unduly hampering useful discovery. Where the opinions of experts are central to litigation, as in condemnation cases, the irreducible risk of abuse must simply be accepted. In the end, the central object of litigation is not to reward diligent counsel and penalize lazy or inept counsel, but to achieve a just adjudication of the controversy between the parties. That can be accomplished only by a full exposure of the relevant facts.

Much of the government's argument in this court has revolved about the thesis that discovery from its appraisers was improper because the government had not yet reviewed and approved the appraisers' results and had not yet decided which if any of the appraisers would be called as witnesses.

■ One variation of this theme is wholly technical. The government argues that the opinions of the appraisers should not be subject to discovery at this stage because they are "incompetent and immaterial" unless and until the appraisers have been called as wit-

18. See Report of Committee on Rules of Practice and Procedure, 43 F.R.D. 211, 231–232 (1967).

19. But see 4 Moore, Federal Practice, § 26.23 [8.–2] at 1410–11 (1967).

20. United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593, 597 (D.Md.1963); Long, 38 F.R.D. 111, 112, 127–128, 133–135 (1964); Friedenthal, 14 Stan.L.Rev. 455, 485, 487–88 (1962). Cf. Oceanside Union School Dist. of San Diego County v. Superior Court, 58 Cal.2d 180, 23 Cal. Rptr. 375, 373 P.2d 439, 447 (1962); Louisell, Modern California Discovery, § 11.04 at 333–35 (1963).

nesses and found to be qualified. This logic would preclude pretrial discovery from any expert—indeed from anyone—since admissibility of evidence and competence of witnesses may always be raised at trial. But discovery is not limited to evidence admissible at trial; and Rule 30(c) provides that "evidence objected to shall be taken subject to the objection."[21]

■ Other bases for the government's argument have more substance. Discovery from appraisers not subsequently called as witnesses does not serve to clarify the areas of dispute, narrow the issues, or protect the discoverer from surprise. It is not necessary to prepare for cross-examination or rebuttal of those appraisers' testimony. On the other hand, appraisers not called as witnesses may have discovered facts, applied techniques, or arrived at opinions which, though not acceptable to the government, were nevertheless relevant to the subject matter of the litigation and helpful to the landowner. It would be intolerable to allow a party to suppress unfavorable evidence by deciding not to use a retained expert at trial.

The amendments to Rule 26, proposed by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, would authorize discovery regarding opinions previously given by retained experts whom the opposing party expects to call as witnesses, but would permit discovery from other retained experts "only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice." 43 F.R.D. 211, 225 (1967).[22] Since a litigant will not know what facts the opposing party's experts have discovered and what opin-

ions they have formed, it will rarely be possible to make the required showing.

The Committee appears to recognize that the severe limitation imposed upon discovery from retained experts whom the opposing party will not use as witnesses cannot be justified by the argument that it would be unfair to permit a party to gain the benefit of the expert's work without paying for it. The Committee notes that this objection may be readily overcome by conditioning discovery upon payment by the discovering party of all or part of the expert's fee. 43 F.R.D. at 234. For the reasons we have stated, we do not believe that "fear that one side will benefit unduly from the other side's better preparation" (43 F.R.D. at 235) is a sufficient justification for the application in condemnation cases of a rule which would deny a litigant the testimony of a witness rejected by his opponent simply because his opponent reached the witness first and paid for his services.

■ As the Advisory Committee observes, under the present rules "the court has ample power to regulate the time and scope of discovery, and to curb any abuses that appear." 43 F.R.D. at 235. It may well be that in this case the trial court would have concluded that discovery from the government's retained appraisers should be deferred until the appraisers had completed their work and the government had determined whether or not to use them as witnesses. Discovery could then have proceeded without interfering with the completion of the appraisers' work. It could then have been directed to the quite different areas of inquiry made relevant by the government's decision as to whether or not a particular appraiser would be called as a witness. And it could have been conditioned upon payment of all or part of an appraiser's fee if it appeared that discovery would be directed only to possible use of the appraiser's knowledge in the

---

21. See Long, 38 F.R.D. 111, 146 (1965); Note, 42 St. John's L.Rev. 52, 57–58 (1967).

22. See Notes, 68 Colum.L.Rev. 271, 280–83 (1968).

preparation and presentation of the discoverer's own case. But the government did not seek such a protective order. As we have seen, it sought instead to bar discovery completely in broad areas of legitimate inquiry.

The government argues that even if the protective order which it requested would not have been proper, the discovery sought by the landowner was unjustifiably broad, as reflected in the subpoenaes issued to the government's appraisers and the questions asked of the witnesses on deposition.

As we read the record, the question of the propriety of particular details of the proposed discovery was not presented to nor decided by the trial court. As the court's opinion indicates, its decision was directed only to the motion of the government for a broad order foreclosing discovery of the appraisers' opinions and their foundation, facts "presumably" known to the landowner, and matters relevant to cross-examination.[23] In the course of the proceedings on appellee's motion for imposition of sanctions following the abortive depositions, government counsel informed the court that the court's earlier opinion covered the issues involved.

We therefore decline to consider objections to the scope of the inquiry other than those presented by the government's motion. The validity of other possible objections remains open for consideration by the trial court if properly raised on remand.

The government's final contention is that although the trial court had power to dismiss the complaint, it had no authority to strike the declaration of taking and the order for delivery of possession. Without reaching the question of power (cf. United States v. Cobb, 328 F.2d 115, 116 (9th Cir. 1964), and cases cited), we think that where the taking itself is not challenged, striking the declaration of taking and the order for de-

livery of possession is not an appropriate sanction under Rule 37.

The judgment below is modified by eliminating therefrom the portion thereof which strikes the declaration of taking and the order for delivery of possession from the records of the court. The judgment as so modified is affirmed, and the cause is remanded for further proceedings.

---

**23.** Neither the government nor its appraisers moved to quash or modify the subpoenas. See Rule 45(b).