**UNITED STATES of America, Plaintiff,**

v.

**REAL PROPERTY KNOWN AND NUMBERED AS 2847 CHARTIERS AVENUE, PITTSBURGH, PA including all improvements, fixtures, and appurtenances thereto or therein; et al., Defendants.**

Civ. A. No. 89–2456.

United States District Court,
W.D. Pennsylvania.

May 28, 1992.

**432**

Almon S. Burke, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

William H. Difenderfer, Laughlin, Difenderfer & Boyle, P.C., Pittsburgh, Pa., for claimant, John F. Conley.

James A. Wymard, Atty., Pittsburgh, Pa., for John F. Conley.

Anthony Mariani, Pittsburgh, Pa.

### MEMORANDUM ORDER

LANCASTER, United States Magistrate Judge.

These consolidated complaints in civil forfeiture were filed pursuant to 18 U.S.C. § 1955 and 15 U.S.C. §§ 1172 and 1177. By these complaints, plaintiff United States of America ("the government") alleges that the defendant real and personal properties are forfeitable to it on the basis that the properties were used or intended to be used in and/or facilitated the conducting, financing, management, supervising, direction, or ownership of an illegal gambling business in violation of federal law.

Before the court is the government's second motion to reconsider our March 10, 1992 discovery order that directed the government to produce a certain document, which we will refer to as the "second Holmes Report." [1] That report contains the facts known and opinions held by an expert retained by the government's counsel for the purpose of examining certain alleged gambling machines. These machines had been seized as part of the inventory of a certain piece of real property that was seized pursuant to one of the warrants of arrest issued by this court in this consolidated action.

In its motion to reconsider, the government contends that the Holmes Report is protected from pretrial discovery under the attorney work-product privilege pursuant

1. The first Holmes Report was produced by the government for the inspection of all parties.

to Fed.R.Civ.P. 26(b)(3) and the deliberative process privilege.[2] For the reasons set forth herein, the motion to reconsider is denied.

### Attorney Work-product Privilege

▮ The government contends that the Holmes Report is privileged from discovery by the attorney work-product privilege, established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Reduced to its essence, the attorney work-product privilege protects documents that reveal an attorney's mental processes and legal theories when prepared by the attorney in contemplation of litigation. *See Hickman v. Taylor, id.* at 509–10, 67 S.Ct. at 392–93. The *Hickman* principles have been codified in the Federal Rules of Civil Procedure at Rule 26(b)(3).[3]

Instantly, the government does not contend that the report contains anything which reveals its attorney's trial strategy or mental impressions. The government's argument seems to be centered around the concept that because the expert was retained by an Assistant United States Attorney in anticipation of litigation, the expert's report is, by definition, attorney work-product under Rule 26(b)(3).

In support of its position, the government refers to *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975), for the proposition that the attorney work-product privilege applies to material prepared by agents for an attorney as well as those prepared by the attorney him- or herself. However, in *Nobles*, which involved the production of documents under Fed.R.Crim.P. 16 not Fed.R.Civ.P. 26, the court held that the work-product doctrine applies to investigators and other agents upon whom attorneys must rely in the compilation of materials in preparation for trial. *Nobles* does not stand for the proposition that an expert's knowledge and opinions becomes attorney work-product under Rule 26(b)(3) simply because that expert was retained by an attorney in anticipation of litigation.

The government's claim that the Holmes Report is protected by the work-product privilege under Rule 26(b)(3) has no merit. At the threshold, expert discovery in federal court is not governed by Rule 26(b)(3). Rather, expert discovery is governed by Fed.R.Civ.P. 26(b)(4). Rule 26(b)(3) is expressly made subject to the provisions of subdivision (b)(4). *See* n. 2 *infra.* Moreover, the advisory committee note to Rule 26 expressly states that the committee "reject[ed] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine." Fed.R.Civ.P., West's 1991 Revised Edition at 87.

---

**2.** We need not dwell on the rather long procedural history surrounding this routine discovery matter. We need only state that the issue of whether the report is discoverable under Rule 26(b)(4) was argued, briefed and decided adversely to the government by me initially, again by me on the government's first request to reconsider, and thereafter by the referring district judge on appeal. It has already been determined in this case that the Holmes Report is discoverable under Rule 26(b)(4). That determination is now the law of the case. It would clearly serve no purpose to rehash that issue here.

It was only after the referring district judge affirmed my denial of the government's first motion to reconsider that the government filed a second motion to reconsider where, for the first time, it raised the argument that this report was protected by the doctrines of attorney work-product under Rule 26(b)(3), and deliberative process privilege. These are the only issues addressed herein.

**3.** Rule 26(b)(3) reads, in relevant part:

    **(3) Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

The government has failed to provide us with any authority from any jurisdiction, state or federal, which holds that simply because an expert was retained by the attorney in anticipation of litigation, the ensuing expert report is privileged from discovery by virtue of the attorney work-product privilege. This is not surprising, as it is simply not the law. The weight of authority is to the effect that the Rule 26(b)(3) work-product privilege does not apply to discovery of experts' material. *See, i.e., In re IBM Antitrust Litigation*, 77 F.R.D. 39, 41–42 (N.D.Cal.1977); *Quadrini v. Sikorsky Aircraft Division, United Aircraft Corp.*, 74 F.R.D. 594, 595 n. 1 (D.Conn.1977); *Beverage Marketing Corp. v. Ogilvy & Mather Direct Response, Inc.*, 563 F.Supp. 1013 (S.D.N.Y.1983).

Nor was the government's position the law prior to the 1970 amendment adopting subsection (b)(4). *See, generally, Sachs v. Aluminum Co. of America*, 167 F.2d 570 (6th Cir.1948) (*Hickman v. Taylor* does not "cover information sought of one who is not a lawyer, but has merely been retained by an attorney-at-law as an expert in a scientific field."); *United States v. 38 Cases*, 35 F.R.D. 357 (W.D.Pa.1964) ("[t]hat experts may provide evidence for a party does not, *ipso facto*, make them technical advisers to a lawyer and their advice and reports a part of his work-product"); *United States v. McKay*, 372 F.2d 174, 176 (5th Cir.1967) ("assuming that the rule of the *Hickman* case might be applicable to [this case] it is clear that a report prepared by [expert] ... is not privileged from disclosure either under the attorney client privilege or as the work-product of the lawyer"); *United States v. Meyer*, 398 F.2d 66, 74 (9th Cir.1968) (the experts ... "knowledge of relevant information was not immunized from disclosure merely because the government paid them to acquire it."); *see also*, 8 Wright & Miller, Federal Practice and Procedure: Civil § 2029, and authorities cited therein.

*Deliberative Process Privilege*

■ The government next contends that the Holmes Report is protected from pretrial discovery by the deliberative process privilege. That privilege precludes the production of documents that expose the decision-making process of a government agency. The privilege is designed to protect and thereby encourage the internal free flow of ideas, comments, and expressions necessary for government agencies to reach decisions.

The deliberative process privilege is one of the express exemptions from document disclosure under the Freedom of Information Act. 5 U.S.C. § 552(b)(5). The authorities which the government cites in support of its claim here, for the most part, involve production of documents pursuant to the Freedom of Information Act. Under that act, the privilege protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* The fact that, as here, the document was prepared by an outside consultant for the agency's use, does not adversely affect its status as "interagency." *Brush Wellman Inc. v. Dept. of Labor*, 500 F.Supp. 519 (N.D.Ohio 1980).

■ However, this case is not one under the Freedom of Information Act but under the Federal Rules of Civil Procedure. Nonetheless, the legislative history is clear that by including this exemption in the Act, Congress had specifically intended to codify the components of the federal common law doctrine of "executive privilege." *National Labor Relations Board v. Sears*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). We perceive no functional differences in the applicable principles for an analysis of the privilege under the Freedom of Information Act or the federal common law. Specifically, whether we are focusing on executive privilege as it exists in the federal common law, or the statutory exemption found in the Act, for the privilege to prevail, the document must actually relate to the deliberative process by which policies are formulated by the agency. Restated, the document must somehow explain, directly or by inference, the reasons underlying an agency's decision or other-

wise expose the process by which that decision was reached.

Instantly, the government's argument in support of its contention that production of this document would disclose its deliberative process is somewhat unfocused. The government simply makes the conclusory averment that production of the Holmes Report will "expose the deliberative process of the U.S. Justice Department." However, it appears that the actual machines which are the subject of the report are not yet the subject of one of the pending complaints in civil forfeiture. We glean that the government fears that disclosure of this report will expose the fact that the government has exercised its right of prosecutorial discretion by initiating civil forfeiture proceeding against some of the seized gambling machines and not against others.

However, prosecutorial discretion, both generally and within the context of this case, is not some closely guarded government secret. On the contrary, it is clearly recognized as well within the proper functions of the Justice Department. *See generally Maryland v. United States*, 460 U.S. 1001, 1005, 103 S.Ct. 1240, 1243, 75 L.Ed.2d 472 (1983).

Moreover, the nonproduction of the Holmes Report will not shield the fact that the government exercised prosecutorial discretion in this action. It is apparent by simply reviewing the extensive record in this case that some of the gambling machines seized are the subject of a pending complaint in civil forfeiture. Others are not. To contend that the Holmes Report must not be produced in order to shield that fact in this case is illusory.

Reduced to its essence, the government's position rests solely on the fact that the decision makers utilized this report during the process of deciding whether to initiate civil forfeiture actions against certain gambling devices and not against other gambling devices. That may be true; however, it is not enough to invoke the privilege. The law in this area is clear.

[It] is not enough to assert, in the context of Exemption 5, that a document is used by a decisionmaker in the determination of policy[.] ... Rather, to come within the privilege and thus within Exemption 5, the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.

*McClelland v. Andrus*, 606 F.2d 1278, 1289 (D.C.Cir.1979).

We have reviewed the Holmes report *in camera*. It makes no recommendations, expresses no opinions on legal or policy matters. The retained expert simply describes the physical characteristics of the subject machines and then renders an opinion as to whether the machines are or may be used as gambling devices. Nothing in the report in any manner states, refers to, or otherwise discusses or sheds any light on why the government chose to initiate civil forfeiture actions against certain gambling devices and not against other gambling devices.

In summary, the fact that the government decided to exercise its right of prosecutorial discretion in this case is not protectable. Only the process by which that decision was reached is protected. Nothing in this report exposes that process. To apply the privilege in this case would expand the doctrine beyond any sense of reasonableness.

Accordingly, the government's motion to reconsider is denied.